# Cases

# FIRST DEPARTMENT

AT

# GENERAL TERM,

## February, 1891.

THE PEOPLE, Respondent, *v.* CHARLES WEBSTER, Appellant.

*Crimes — an expert not entitled to give an opinion as to the value of non-expert testi-mony — the court should not express an opinion on the value of medical testimony — the jury must pass on the criminality of the act — Code of Criminal Procedure, sec. 527.*

Upon the trial of an indictment for murder, in which the defense was insanity, witnesses, not experts, characterized the acts of the prisoner, within their observation, as irrational. Medical witnesses were then examined, one of whom was asked, and allowed to give his opinion, as to the value of the opinion in such a matter of a witness, not an expert, who had been inquired of in respect thereto. *Held,* error.

That the question of the value of such testimony was for the jury.

Upon the trial the court, among other things, stated to the jury, "it is my experience and observation that you can get doctors to swear on both sides of any question."

*Held,* error.

The court further charged the jury that there was no pretense that the defendant, if sane, had any legal excuse or justification for the act of killing; that, if insane, their verdict should be not guilty, but, if sane, then the defendant was guilty of a criminal homicide, and it was for the jury to determine the degree of guilt.

*Held,* error; that whether the defendant was sane or insane, the question as to the criminality of his act was for the jury alone to determine.

Under section 527 of the Code of Criminal Procedure it is the duty of the court, upon appeal to the General Term, to order a new trial in a criminal case when justice requires it, although no exception has been taken below to the evidence or the charge which is deemed improper.

APPEAL by the defendant from a judgment and verdict of conviction of manslaughter in the first degree, had in the Court of General Sessions of the Peace, in and for the city and county of New York, on the 31st day of October, 1890; and also from an order of the court denying the defendant's motion for a new trial.

*William F. Howe,* for the appellant.

*Henry B. B. Stapler,* assistant district attorney, for the respondent.

DANIELS, J. :

The defendant was charged by the indictment with the crime of murder in the first degree for killing Robert McNeill. The evidence tended to establish the fact that the deceased had been criminally intimate with the defendant's wife, and after information of that fact had reached the defendant, and when he was in a saloon near his own residence, he was informed that the deceased, with a friend, had been inquiring for him. The defendant then left the saloon and crossed to his own residence, passing these two persons as he went in. He there obtained a revolver and returned to the street, when he made an exclamation referring to that intimacy and at once discharged the revolver in the direction of the deceased. The first discharge was without effect, but the second inflicted a mortal wound, thereby producing the death of McNeill. The occurrences were such as to indicate the commission of the offense charged in the indictment.

The defense made was that of insanity, and evidence was given of the preceding life, habits, health and peculiarities of the defendant, from which, with the circumstances attending the killing and their own observations, medical witnesses testified that, in their judgment, he was insane, and was so when the homicide took place. Other witnesses, not permitted by the law to give a general opinion, characterized his acts and conversations, within their knowledge, to have been irrational. The attention of one of the medical witnesses, who was sworn and examined on behalf of the defendant, was directed to that character of evidence, and questions were put to him by the counsel for the people which elicited these answers: Q. What is your opinion, as an expert, of the value of an opinion in medical matters of non-experts? A. I think that sometimes it is exceedingly valuable and at other times utterly value-

less.   Q. Explain in what cases you think it exceedingly valuable ?'
A. When the person who gives the testimony has a mind so consti-
tuted that can appreciate, that they are careful observers; if a person
who is a careful observer states what he sees, his testimony is of
value, a good many persons might observe and their opinion would be
of no value.   Q. Do they not almost always exaggerate ?   (Objected
to.   Objection overruled.   Exception.)   A. Not necessarily; no, sir.
Q. Is it not the result of your observation that they almost always.
exaggerate ?   (Objected to.   Objection overruled.   Exception.)   A. I
think people are very much given to exaggerating either their own.
symptoms or the symptoms of their friends, as a general rule.

The inquiries were clearly improper, and should not have been
allowed to be answered.   It was for the jury to judge of the wit-
nesses making the answers referred to, and of the effect which
should be given to the limited opinions expressed by them.   Their
evidence, as the law permitted it to be taken by those witnesses, was
before the jury for them to consider, with all the qualifications
arising from their appearance, their intelligence, bias, habits of
thought and the correspondence of their conclusions with what they
had observed or heard the defendant say.   And its force was not to
be diminished by the opinions which other witnesses might be
inclined or disposed to express concerning them.   (*People* v. *Lake*,
2 Kern., 358 ; *Reynolds* v. *Robinson*, 64 N. Y., 589.)

The objection taken to the reception of the evidence was general,
and in ordinary cases would be rejected as insufficient.   But this
rule is now inapplicable to criminal trials, when the evidence itself is
so manifestly improper as to need no particularity by way of objec-
tion to point it out.   That was the nature of the final answer obtained
from this witness on this subject, for it must have tended to subject
the evidence of the other witnesses to discredit in the minds of
the jury.

The observations of the learned judge presiding at the trial con-
cerning testimony obtained from medical or expert witnesses could
have been no less prejudicial with the jury.   It was a statement of
the convictions or conclusions, created by listening to the testimony
of this class of persons in other cases, forming no part of this trial.
And as objectionable as evidence would have been to prove what
had transpired in the cases referred to for the purpose of sustaining·

the correctness of the expressions which were made to the jury. These were that each side has called experts, and they have given their opinions upon an assumed state of facts, so that it leaves you untrammeled to determine what the facts are. "Now, in this case, a hypothetical question was put to two doctors, and if I remember the evidence, it fairly and in the main stated the history of this case, and both of them have sworn that, in their judgment, at the time the defendant committed the act he was insane. Non-experts, as I have said, have also stated the same opinions. The People have also called an expert, which shows how doctors disagree. I have tried a great many homicide cases and other cases in which doctors have been called as witnesses, and it is the most remarkable circumstance that you can always obtain an equal number, as a rule, to swear on both sides of any question. A great many people consider, for this reason, that their testimony is unreliable. It is not for me to say that, but for you to determine how reliable or unreliable it is It is my experience and observation that you can get doctors to swear on both sides of any question." These observations practically added the testimony derived from the experience of the judge to that of the witnesses, which could not be without effect in the minds of the jurors.

It was also observed, in the course of the charge, that the defendant admits that at the time and place alleged in the indictment, and by the means therein stated, he killed the deceased therein named. "There is no claim or pretense on the part of the defendant that if he was sane at the time of the killing there is any legal excuse or justification for his act. Therefore, if from the evidence in this case you find, as a matter of fact, that the defendant was, at the time he killed the deceased, insane to the degree which the law defines as rendering a person irresponsible and unaccountable for his acts, your verdict will be not guilty by reason of his insanity at the time. If, on the contrary, you find from the evidence, as a matter of fact, that he was sane at the time he killed the deceased, then he is guilty of a criminal homicide; and it will be for you to determine the degree of his guilt."

The final conclusion was that if the defendant was not insane, then he was guilty of a criminal homicide, and the only question

was the degree of his guilt. This direction was a usurpation of the province of the jury. It was for them alone to decide whether his act was criminal, even if he were not at the time insane. The law provides for placing the facts before them, upon which their judgment is to be formed, and then leaves it to them to conclude whether the act charged was criminal or not. This they were not in this case left at liberty to do; for the judge decided it to be criminal, if the defendant was not proven to have been insane, and thereby withdrew so much of the case from the deliberations of the jury. This was not proper, and may have been injurious to the defendant. (*McKenna* v. *People*, 81 N. Y., 360.)

These observations of the judge were not made the subject of exception by the counsel for the defendant. But that does not deprive him of the right to have them considered and acted upon by an appellate court, for, by section 527 of the Code of Criminal Procedure, it has been provided that a new trial may be ordered on the decision of an appeal, when justice requires it, "whether any exception shall have been taken or not in the court below." The defendant was entitled to a trial according to the well-defined rules of law, and that it is reasonably plain he has not had. To secure him that trial another investigation of his case is necessary; and upon that he is now to be tried in all respects as though he had not been once tried already. (Code Crim. Pro., § 544.) The verdict, in other words, will be completely set aside, not only so far as it may be a shield to him, but also so far as it has made him the subject of punishment.

The judgment should be reversed and a new trial ordered.

VAN BRUNT, P. J., and BRADY, J., concurred.

Judgment reversed and new trial ordered.