## PEOPLE *v*. CASSIN.

*(Supreme Court, General Term, First Department.* December 31, 1891.)

**1. LARCENY—SUFFICIENCY OF EVIDENCE.**

On a trial for larceny from an hotel safe of a box containing money and securities, it appeared that defendant was a hall-boy in the hotel, whose position when awaiting orders was on a settee in the hotel office, about 12 feet from the safe, and that the owner of the box was a regular guest of the hotel, and in the habit of depositing the box in the safe for security. Two witnesses testified that about two weeks prior to the larceny defendant asserted to them his ability to take the box from the safe, and solicited the help of one to secrete it, and, on his refusal, declared his intention to take it, and secrete its contents up-stairs under the carpet. Defendant admitted such conversation, but denied taking the box, or any intention to take it. It appeared that, shortly before midnight, the clerk went down-stairs to the wash-room, leaving defendant seated on the settee, and that he returned in about five minutes, and found the box was gone, and that defendant at such time was absent, and did not return for a half hour. Defendant did not explain such absence. Part of the contents of the box was found under the stair-carpet. *Held,* that the evidence was sufficient to support a conviction.

**2. SAME—INSTRUCTIONS.**

A charge on the rule of law as to the omission of defendant in a criminal case to produce an exculpatory witness is rendered free from objection by a charge, at defendant's request, that the same rule applies to the prosecution.

Appeal from court of general sessions, New York county.

Henry Cassin was convicted of grand larceny in the first degree, and from the judgment of conviction he appeals. Affirmed.

Argued before DANIELS and LAMBERT, JJ.

*Purdy & McManus,* for appellant. *De Lancey Nicoll, (Bartow S. Weeks,* of counsel,) for respondent.

DANIELS, J. The only exception deserving consideration in this case is that which was taken to the refusal of the court, at the conclusion of the evidence of the prosecution, to advise the jury to acquit the defendant. The motion was made on the sole ground of the insufficiency of the evidence to warrant a conviction. There was no reason to doubt that the crime charged had been committed by some person. It consisted in taking a box, deposited for Bernard Sanders in the safe of the Vendome Hotel, in the city of New York. It was placed there on the 15th of September, 1890, and taken from the safe during that day. The box contained $12,808 in United States currency, and four certificates of deposit, of $1,000 each. At and previous to the time when the larceny was committed, the defendant was employed as a hall-boy in the hotel, and he occupied a position, when he was not obeying other orders, on a seat in the office of the hotel, about 12 feet away from the

safe. The owner of the box was a guest or boarder at the hotel, and was in the habit of having the box deposited in the safe, for its security. This fact became known to the defendant, and evidence was given by the witnesses John O'Brien and Oscar Matthews from which the conclusion could be fairly drawn that he had planned the stealing of the box. O'Brien testified that "two or three weeks prior to the 15th day of September of this year I had a conversation with the defendant in reference to a guest stopping at the Hotel Vendome. The conversation was not at my house, where I live. Cassin invited me out to have a walk in the evening, and the talk was had while we were walking. The first thing he said was that he had a good scheme. I asked him what it was, and he went on to relate all about it. He said that there were two book-makers stopping at the Hotel Vendome, and that they left in the safe every night a box containing, I think he said, from ten to twenty thousand dollars. 'So,' he says, 'pretty near every night I be sent into the office for to relieve the clerk. He goes to the water-closet.' And that he had the combination of safe, and that if I would go there for two or three nights, and when I would see him in the office for to walk in, and he would hand me the box. *Question.* And what did he say to you you would have to do with it? *Answer.* He said that all I would have to do was to take it with me. So, after he had got through, then I said, 'I guess I won't have nothing to do with that,' and I advised him not to, either. So he went on to relate then that he was going to try to get it." The witness added that he said to the defendant, "I guess I won't have nothing to do with that." That the defendant asked what would be the penalty, and that the witness replied, "From ten to fourteen years." And the witness then answered: "Well, he asked me then what would be the penalty, and I told him that I thought it was from ten to fourteen years, and he said, 'Well, I would be willing to serve ten years if I would get a stake, because I would have more money when I came out than I would earn while I would be there;' and then he got talking. I think he said he would do it himself. I couldn't say his exact words now, but it was to that effect, and that he would take it up-stairs, and hide it under the carpet. We both went home together. The witness Matthews testified on this subject as follows: "I should judge it was about three weeks before the 15th of September, about a week after Sanders and his partner came there. We had the conversation in the basement of the hotel some time during the day. It must have been either at 12:30 or 6, because he goes off and I go on some time between that time. I don't know where the watch was found in the hotel. The conversation I had with the defendant at that time and place was, he asked me if I had ever noticed that box that was turned into the office, and I told him I had, and he said he wouldn't mind having it, and he didn't think there would be much trouble in getting it, and I told him he had better leave it alone, and have nothing to do with it. That was all that was said. About a week afterwards a few words passed between us. · I don't remember whether I mentioned it first, or he did, but the words were: 'Why don't you get the box?' and either he or I answered, 'Why don't you get it yourself?' I don't know which one of us said it. I had forgotten all about it until my attention was called to it. The next I knew of it was when the loss of the box was discovered, and I have had no further conversation with the defendant since that time. I was at the hotel when the loss of the box was discovered. Cassin was not there." These conversations were not denied by the defendant, but he testified that he had no intention to, and did not, take the box. After the larceny the box was found in an ash can, near which the defendant passed, when for a short time he ran the elevator, to relieve its ordinary operator, and the certificates of deposit were found under the stair-carpet, on the stairs extending from the second to the third story of the hotel; and after the arrest the defendant is stated by O'Brien to have said: "If Oscar is brought down, then I will be in a hole."

The precise time when the box was taken from the safe was not made to appear, but the evidence tended to show that there were at least two occasions when the defendant could take it, as the clerk and other persons usually in the office of the hotel were temporarily absent therefrom. This evidence authorized the jury to conclude that the defendant had formed the design of stealing this box, and was willing to serve a long term of imprisonment to obtain its contents. His plan was to take the box, and conceal the contents under the carpet; and the fact that a substantial part of such contents was soon after the larceny found under the carpet, as he designed to conceal it, directly points to him as the guilty person. The improbability that the same plan would be formed, and in part executed, by another person, is so great as to justify its exclusion as a fact in the case. The details had been too carefully matured by reflection to afford ground for belief that they had been formed and executed in the same way by another person than the defendant. For that reason, this combination of the circumstances was very weighty evidence against him, and, with the evidence that he had the opportunity to commit the crime, and was impressed with the conviction that the evidence of Oscar (intending thereby to refer to Oscar Matthews) would place him in a "hole," as he is stated to have expressed himself, was sufficient to bring the case within the province of the jury. The request made at the close of the people's evidence was rightly denied; and while the defendant, as a witness in his own favor, positively denied his guilt, the case was still one for the decision of the jury.

No exception was presented to the charge of the learned recorder in submitting the case to the jury, but it has been urged that he expressed himself too plainly on the effect of the evidence. What he did say in this respect was that "the declarations of a person of his intention to commit a crime, if those declarations are made under such circumstances as to convince a jury that they were freely and voluntarily made, without any threat or induce-ment, without any fear,—that they were freely and voluntarily made,—by a person of sound mind and understanding, and that is followed up by the fact of the commission of a crime having some connection with those declarations, —what stronger evidence could be presented to a jury? It is claimed in this case.that that state of facts has been established by the evidence, and that those conclusions are proper conclusions to draw from it. You, of course, are to determine all questions of fact, and upon you rests the responsibility of determining them correctly." But in the conclusion of these remarks, and otherwise, the jury were informed that it was for them to decide the facts, and that relieved them from all supposition that there was anything intended to be dictatorial in what was said. The jury were not only left at full liberty to determine the facts for themselves, but they were apprised that such was their province; and in support of the verdict it is to be presumed that they acted on that theory.

The reference to the omission of the defendant to produce exculpatory witnesses was within what had previously been settled as the law by the courts. *Gordon* v. *People*, 33 N. Y. 501, 508, 509; *People* v. *Grimshaw*, 2 N. Y. Crim. R. 390, 395, 396; and *People* v. *Hovey*, 92 N. Y. 554. If what was said was too positively expressed, it was rendered free from objection by what was added at the request of the defendant's counsel, that the same rule applied to the prosecution, which was all the counsel deemed to be important. It is true that others had superior opportunities for the commission of this offense, but that is all that can be justly said in his favor; for there is an absence of all other facts having any tendency to implicate either of them as the criminal. The defendant had the opportunity, and had actually planned and intended the crime, as the jury seems to have believed the evidence; and a strong circumstance indicating him to be the guilty person was the finding of the four certificates of deposit as he suggested the stolen property could

be hidden.  In no view does the defendant appear to have been prejudiced by what occurred on the trial, and, as the evidence quite clearly indicated his guilt, his conviction was proper, and must be affirmed.

LAMBERT, J., (*concurring.*)  The defendant was charged in the indictment with having, on September 15, 1890, stolen from the safe in the office of the Hotel Vendome, located at the corner of Forty-First street and Broadway, in the city of New York, a box containing $12,808, four certificates of deposit of $1.000 each, and a gold watch, the property of one Bernard Sanders.  The record before us indicates that it was on the trial, and by counsel for defendant in his printed points, admitted that the box containing the property enumerated was, on the 15th day of September, 1890, stolen by some one; so the important inquiry is, whether the proof afforded by the circumstances developed on the trial is of sufficient probative force, and so far conclusive against the defendant, as to justify the jury in convicting the defendant of the crime.  The evidence tended to show, without contradiction, that Sanders was and had been engaged in plying a trade or profession known as a "bookmaker," and as such had in his possession from time to time considerable sums of money, which was kept by him in a box, and deposited at various times, from the 17th of August up to the time of the commission of the larceny, in the safe at the hotel for safe-keeping, and that this fact was known to the defendant and others, engaged in service as clerks and hall-boys of the hotel.  It appears from the evidence of the witnesses O'Brien and Matthews that the defendant, some two weeks prior to the time of the larceny, asserted his ability, from the opportunities afforded him from time to time, to take this box from the safe, and solicited the assistance of O'Brien to secrete it, and, upon the refusal of O'Brien to aid him, went so far as to declare his intention to take it, and of secreting the contents under the carpet.  The defendant, as a witness in his own behalf, admits that he had the conversation testified to by these witnesses, so that the jury probably had no trouble in reaching the conclusion that the defendant, long before the property was stolen, knew that the box containing money was kept in the safe, and realized the opportunities afforded from time to time to obtain possession of it, and that he not only possessed an inclination, but declared his ability and intention, to do so.  It also appears from the evidence in the case that the clerk Whitman, after depositing the box in the safe, remained at the counter of the hotel office until about noon of that day, and until relieved by the witness Cook, as clerk, and that up to that time the box had not been removed from the safe.  The evidence of Cook is that he continued in the discharge of his duties as clerk until 6 o'clock in the evening, when he was relieved by the clerk Whitman, and that during this period of time the safe had not been opened, except upon one occasion, by himself, to enable the proprieter, Plaut, to take from the safe a book for inspection; that he did not see, nor was his attention in any manner directed to the presence of, the box in the safe.  At 6 o'clock the clerk Whitman relieved Cook, and continued in charge of the office until after midnight.  Whitman testifies that it was the duty of the defendant to remain upon a settee about seven feet distant from the counter of the hotel office, when not serving the guests of the house or the directions of his superiors, and that, about the hour of 5 minutes before 11 on that evening, he (Whitman) walked out from behind the counter, down towards the front door, looked out, and walked back, and spoke to one or two of the guests, and then went down-stairs to the wash-room, washed his hands, and returned, being absent about five minutes.  At the time he went down-stairs, the defendant was then sitting upon the settee, but upon his return he was gone, and remained absent about half an hour; that access to the office of the hotel was by means of a door-way or gate, leading behind the counter, and that it was always open, and was on the night in question.

v.16N.Y.s.no.12—59

From the evidence of Whitman the jury were permitted to infer that the opportunity anticipated, if not sought, occurred for the defendant to take, unobserved, the box from the safe; and the record before us fails to disclose any explanation by the defendant of his absence of about one-half hour immediately following such opportunity. The force of these circumstances connecting the defendant with the crime charged is made more apparent by the evidence of the clerk Whitman, that upon his return from the wash-room he immediately discovered the loss of the box, taken in connection with the evidence of the witnesses Cook and Plaut that the box had not been taken from the safe during the absence of Whitman, and permitted the inference that the defendant took the box from the safe during the time Whitman was in the wash-room, and that his absence for half an hour thereafter was for the purpose of secreting the same. The defendant made no attempt to explain the cause of his absence, or to give any excuse for his continued absence from duty at the time the evidence disclosed he was charged with the commission of the theft. It must have been manifest to the defendant, upon the presumption that the jury believed the evidence of the witness Whitman, that it was important for him, to exculpate himself from the force of these circumstances, that he explain the occasion of his absence; and for his failure so to do we may assume that the jury indulged in the assumption that he could not without disclosing circumstances tending to connect him with the crime. The proof afforded by these circumstances was sufficient to place him under the obligation of proving where he was at this time, and for his failure so to do the jury were justified in adopting it as a criminating circumstance. *Gordon* v. *People*, 33 N. Y. 501; *Brooks* v. *Steen*, 6 Hun, 516.

O'Brien testified that some two weeks before the theft the defendant stated to him that he would take it (the money) up-stairs, and hide it under the carpet. Hazen, a witness introduced upon the part of the people, who was an engineer in the hotel, testified that he made a search for the lost property, and found the four certificates of deposit under the stair-carpet, between the second and third floors of the hotel. If the evidence of this witness is reliable, it probably was assumed by the jury that the party guilty of the theft placed these certificates under the carpet for the purpose of dispossessing himself of articles he could not use, and of leaving them in a situation that would cast suspicion upon others, and thereby relieve himself of the evidences of guilt. It would be a strange coincidence, upon any hypothesis except that of the guilt of the defendant, that the stolen property should be discovered in the place where the defendant declared he could hide it. Conceding that the jury believed the evidence of these two witnesses, the circumstances established thereby justify the inference of the execution of the declared intention to take the box in question. The finding of the certificates in the place where the defendant declared he could place the contents, together with his threat to commit the theft, the loss of the property, the opportunity afforded the defendant, his unexplained absence at the time of its loss, furnish, not only sufficient, but, to our minds, convincing, proof of the guilt of the defendant, and that the verdict of the jury was justified upon the evidence in the case.

The defendant complains that the court committed an error in its charge to the jury as follows: "It is true, gentlemen, that the court of appeals in two cases reiterated the rule in reference to the non-production by the defendant of a witness or witnesses who are within his reach, and whom he could produce, and which rule the assistant district attorney has called your attention to. The first case is that of *Gordon* v. *People*, and the other case is that of *People* v. *Hovey*. He has read to you from the decision of the court of appeals in both of those cases, and you will apply the rule of law that he read from those decisions as to the fact, if it be a fact, that there are witnesses within the defendant's reach whom he might have produced, if he had desired to do so." By this reference of the trial judge, he adopted the law of

these two cases read by the district attorney as applicable to the facts as they might be found by the jury in this case. From the appeal-book before us it does not appear that all of the evidence and proceedings had upon the trial of this case is contained in the record; hence, we are not advised of the facts present to which the rule of law was directed as a guidance to the jury in reaching a conclusion. There is nothing in the record from which an inference is permissible that the rule, as stated, misled, or tended to mislead or confuse, the jury.

There was no error committed, and the judgment of conviction should be affirmed, and the case remitted to the court of general sessions of the peace of New York county for execution.