*Joshua M. Van Cott* for appellant.

*Samuel H. Arnold* for respondent.

Agree to affirm; no opinion.
All concur.
Judgment affirmed.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* HENRY C. FANNING, Appellant.

In a criminal case the trial judge has the right and it is his duty to present to the jury the evidence in such light and with such comments as will enable them to see its relevancy and pertinency to the particular issue upon which it was admitted.

A just, fair and accurate presentation of the evidence, therefore, is not objectionable simply because it may be regarded by the jury as bearing hardly upon the accused.

(Argued March 9, 1892; decided March 22, 1892.)

APPEAL from judgment of Court of General Sessions of the Peace in and for the city and county of New York, entered upon a verdict rendered June 4, 1891, convicting the defendant of the crime of murder in the first degree.

The following is the opinion in full:

"A full, careful and deliberate examination of the very bulky record in this case satisfies us that there is no reason for a reversal of this judgment on the ground that justice requires a new trial. There is not a shred of evidence upon which to base the theory of the suicide of the deceased. It is perfectly clear she was killed by some one, and we think the evidence shows in a satisfactory manner that the defendant is that person. Between half after nine and ten o'clock on the evening of April 18, 1891, a witness who was passing along 96th street on his way west from 3d to 4th avenue, in New York, saw a man running on the other side of the street, and very soon thereafter the witness heard groans and almost immediately a woman came towards him whose cheek was bloody from a cut in or near her neck. The woman said something to him, and he thereupon turned and assisted

her to a drug store on the corner of 3d avenue and 96th street. He was on the inside of the north sidewalk, and went east and aided the woman by putting his right arm under her left arm, and he noticed that it was the left side of her neck that was cut and bleeding. They proceeded to the drug store where he seated her on a chair and in a moment she fell from it on the floor and almost immediately died. An ambulance was sent for, the signal for which was received at 9.59 o'clock, and in the course of a few moments it arrived with a surgeon. The latter upon an immediate inspection of the woman found that she was dead, and her body was taken to the station-house, where a post mortem examination was made, which revealed a wound from four and a half to five and a half inches long just below the angle of the jaw, and which caused the woman's death. The latter half of the wound was rough and jagged. What the coroner's physician called the external jugular was cut and the cause of her death was the hemorrhage resulting therefrom. The physician said from his experience a wound made as this one would be more likely to be made by a second party, as a person cutting himself always cuts downwards and directly across and severs the windpipe, and in this case the windpipe was not cut.

"The woman thus killed was one Emily Taylor, who was between 38 and 40 years of age. She had been married, but her husband died about two years prior to this time, and she had been living ever since and up to about two weeks before the killing, with the defendant as his mistress. They separated because defendant was out of work and had no means to support her, and they were behind in their rent and had been notified to pay or leave. The defendant and his friend McMullin went to board at the Harlem House, and had a room together. The defendant had a wife and children, but his wife had separated from him when she learned he was intimate with this other woman, and had gone to her father's to live. The defendant was very fond of this mistress and felt badly when he was compelled to separate from her. On the evening in question he had left his friend about 6 or 6.30 o'clock and, as the friend says, did not return to the hotel until 12 o'clock, and then he informed his friend that he had killed

Mrs. Taylor.  He told his friend that he had killed her by cutting or 'jabbing' her with a razor, 'that keen, narrow razor, you know,' and had then thrown it away on the plaza at 4th avenue and 96th street, in the bushes.  The evidence of this witness was, of course, the most important in the case, and he was subjected to a very rigid and exhaustive cross-examination.  The evidence shows quite conclusively that he was a drinking man and was frequently drunk, and the defendant was himself addicted to intemperate drinking.

"This witness also said that he had heard defendant say that if he could not have or possess Mrs. Taylor, none other should, and he also told the witness, who noticed that he was seemingly low spirited, that there was murder in his heart.  These conversations took place soon after they went to the Harlem House, and but a short time before the killing.  If the witness were believed, the case of the people was made out when taken in connection with the other evidence, and accordingly upon the argument here the defendant's counsel laid great stress upon the inherent improbability of the story as a reason for dismissing it from the case, and in that event he claimed there should of necessity be a reversal of the judgment.  There are many circumstances in proof, each of which may be somewhat slight in itself, but altogether they serve to quite strongly corroborate the evidence of the witness.  The defendant and he were always on good terms, and no motive has been even attempted to be shown for this infamous perjury of the witness if his account be untrue.  The defendant himself can think of none and alleges none.  It is quite unnecessary to mention in detail these various collateral circumstances of corroboration, but there is one outside of and beyond them which seems overwhelming in its force.  The witness says the defendant described the razor with which he committed the crime as 'that keen, narrow razor,' and that he, the witness, had frequently seen it in the possession of the defendant, and had shaved with it himself.  The defendant, on the very evening of the homicide, told the witness that after using it he had thrown it over in the plaza at Ninety-sixth street and Fourth avenue, in the bushes.  The witness had a conversation with the detectives on that same evening, and immediately or soon

after the defendant's arrest, and from what was told them by him, one of the detectives went to the plaza to hunt for a razor, and there, in almost the exact spot described by defendant to the witness, the 'narrow, keen razor' was found. The defendant denies the whole conversation, and also denies the ownership of the razor, and denies that he ever saw it or used it, as sworn to by the witness.

"It is clear, however, that the officer went to the exact spot where the razor was found, and that he went there in consequence of what he was told to do by the witness, and that he went there to find a razor. Where did the witness get the information? He says he got it from the defendant, and there is no other source from which, as the evidence appears, he could have got it.

"Again, the razor which was found was somewhat broken or nicked in the blade; a portion of the metal was knocked off or out of it. The ambulance surgeon who made an examination of the body of the deceased immediately after its removal to the station-house, discovered on the outside of and lying upon the dress, and on the left side of the breast, a small piece of steel, dull in color, edges decidedly thin and somewhat ragged, and it looked as if it might be a piece of a razor, and was about a third the size of the nail of the little finger of the witness; and when he saw the razor it impressed the witness as if it might have been a fragment thereof, not filling the entire space of the break in it, however. The witness would not say that it certainly was the case, but that inference from all the facts is most reasonable. It is quite apparent from a perusal of the whole evidence that the people made out a case which was very strong, indeed.

"The evidence as to an *alibi* on the part of the defendant would, if believed, have made out a defense. The defendant denied that he ever made any confession of the crime, and denied its commission, and gave evidence tending to show that he was in another part of the city at about the time of the commission of the crime. The evidence of the so-called *alibi* was very unsatisfactory, loose and vague.

"The issue thus made up between the people and the defendant was presented to the jury in a fair charge on the part of

the court. The counsel for the defendant claims that the trend of the whole charge was unfavorable to the defendant, and on that account he urges that justice requires a new trial. If he mean that the issue in the case was unfairly or improperly presented by the learned judge to the jury, or that the defendant did not have the benefit of a full presentation of his theory of the case and of his defense to the charge, we think the counsel is entirely mistaken in that view.

"In a criminal case we think the judge has the right, and indeed it is his duty to present the evidence to the jury in such light and with such comments that the jury may see its relevancy and pertinency to the particular issue upon which it was admitted, and thus be better qualified to appreciate its character and weight and to determine its credibility. These questions are for the jury, but it is proper that a judge should assist the jury in marshalling the evidence so that they may the more readily and intelligently come to a conclusion which shall be satisfactory to themselves, consistent with the evidence and in accordance with the law. The judge should do this in a fair and impartial manner, having due regard to the rights of the defendant and with a serious and anxious desire for their preservation, but he should not refrain from a just, accurate and clear presentation of the evidence to the jury, simply because when so presented it may fairly be regarded by the jury as bearing hardly upon the accused. A careful reading of the charge of the court in this case convinces us that the duty of the court was performed ably and fairly.

"Throughout the length of his charge it is plainly perceived that the rights of the defendant were fully protected and such evidence as he had was brought to the notice of the jury. The absolute right of the jury to be the sole judges of the fact and their duty to disregard any opinion which they might think the court had formed in the case, if contrary to their own, was presented to them in language which it was impossible for them to mistake or misunderstand.

"We have looked at the exceptions taken by counsel for defendant and none of them is of sufficient importance to warrant the reversal of the judgment. The evidence relating to the suicide of the husband of the deceased about two years

prior to the killing of the deceased, was probably inadmissible, but it was not of any importance. The fact that the deceased woman and the defendant lived in adulterous intercourse for some time prior to the death of the former was proved and the defendant admitted it, and the fact that the husband committed suicide had no bearing on the defendant's case. There was no proof that the defendant had anything to do with it, and it became a wholly immaterial circumstance. Under section 542 of the Criminal Code, which directs the court to give judgment without regard to technical. errors or to exceptions which do not affect the substantial rights of a party, we must hold that the exception furnishes no ground for a new trial.

" Upon the whole case we are satisfied that justice has been done, and that no errors occurred which were prejudicial to the defendant, and the judgment must, therefore, be affirmed."

*Louis Meyer* for appellant.

*H. B. B. Stapler* for respondent.

PECKHAM, J., reads for affirmance.
All concur.
Judgment affirmed. _____

WARREN N. FITCHETT, Respondent, *v.* THOMAS CANARY,
Appellant.

(Submitted March 7, 1892; decided March 25, 1892.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made May 4, 1891, which affirmed a judgment in favor of plaintiff entered upon a verdict and affirmed an order denying a motion for a new trial.

*Albert I. Sire* for appellant.

*Charles Blandy* for respondent.

Agree to affirm; no opinion.
All concur.
Judgment affirmed.