## McMANUS v. WOOLVERTON.

*(Common Pleas of New York City and County, General Term.* June 27, 1892.)

**1. NEGLIGENCE—CROSSING STREET—COLLISION WITH WAGON—EVIDENCE.**

Plaintiff testified that she attempted to cross a street at a point distant from a cross walk, to visit a store opposite, while it was raining, having a shawl over her head, leaving, however, her eyes exposed; that she looked up and down the street before crossing, crossed halfway, and looked again, without seeing anything to excite apprehension, and, after going a short distance further, was knocked down by an express wagon. Other witnesses testified that there was nothing to obstruct the driver's view of plaintiff, and that he had his horses in a run. *Held,* that the court properly refused to dismiss the complaint.

**2. SAME—FOG.**

The evidence of the carelessness of the driver was not impaired by the fact that a fog partly obstructed the street and travelers thereon from view, since thereby the exercise of greater caution and vigilance devolved on the driver.

**3. SAME—INSTRUCTIONS.**

The court did not unduly emphasize the duty of drivers with relation to foot passengers by charging that they had "as much right in the center of the street as a coach driven by a millionaire, and drawn by four horses."

**4. SAME—ASSUMPTION OF FACT.**

Defendant having admitted that its team collided with plaintiff, the assumption of that fact in a charge to the jury was not error.

**5. SAME—CONTRASTING TESTIMONY—READING FROM REPORTS.**

The court did not err in contrasting the testimony of a disinterested witness for plaintiff with that of defendant's driver, nor in reading from an opinion of the court of appeals to the jury.

Appeal from trial term.

Action by Ann McManus against William H. Woolverton, president of the New York Transfer Company, to recover damages for personal injuries. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before DALY, C. J., and BISCHOFF, J.

*Lockwood & Hill,* (*John L. Hill,* of counsel,) for appellant. *Henry Schmitt,* for respondent.

BISCHOFF, J. The complaint alleged specifically, and the answer did not deny, that the horses and wagon with which plaintiff collided were owned by defendant's association, and that they were at the time of the collision in the care and under the control of one of its servants. These facts must therefore be taken to have been admitted upon the trial, (Code Civil Proc. § 522,) and the inquiry was confined to the negligence of the driver of the wagon, the contributory negligence of the plaintiff, and the nature and extent of the latter's injuries. Pedestrians and drivers of vehicles have equal rights to the use of a city street, and the duty to exercise such a degree of care and prudence as to avoid injury to themselves or to others, which the circumstances of the case demand, is reciprocal. *Barker* v. *Savage,* 45 N. Y. 191; *Belton* v. *Baxter,* 54 N. Y. 245; *Brooks* v. *Schwerin,* Id. 343. Nor is it negligence *per se* for a person on foot to cross a city street at any hour of the day or night elsewhere than at the cross walks, (*Brusso* v. *City of Buffalo,* 90 N. Y. 679,) or to omit looking both ways for approaching danger, as in the case of a person about to cross a railroad track, (*Moebus* v. *Herrmann,* 108 N. Y. 349, 15 N. E. Rep. 415.) If, therefore, the driver of a vehicle, with the exercise of ordinary caution, could have seen a person crossing at a point where there is no cross walk, and fails to do so, or if, seeing him, he could have avoided the collision, with the exercise of ordinary care, and does not do so, he will be adjudged guilty of negligence. *Moebus* v. *Herrmann,* Id.; *Murphy* v. *Orr,* 96 N. Y. 14.

It appeared from the testimony of the plaintiff that on the 28th day of February, 1890, between 10 and 11 o'clock in the morning, she attempted to cross Hudson street, at a point distant from the cross walk, intending to visit a

store on the westerly side of the street, opposite her own residence, which was about 72 feet in a northwesterly direction; that it was raining at the time, in consequence of which plaintiff had covered her head with a shawl, leaving, however, her eyes exposed; that before she ventured to cross she looked up and down the street, and, perceiving nothing to excite apprehension of danger, proceeded at an ordinary gait until she got as far as the railroad track running along the center of Hudson street, where she says she again stopped to look, and, feeling reassured from the absence of anything inconsistent with her further safety, she continued on her way until she reached a point about four or five feet west of the westerly track, when she heard a shout, turned about, and was instantly knocked down, thus sustaining the injuries of which she has complained. Tillie Stumpf, a witness for the plaintiff, testified that at the time of the collision she was standing in front of her own residence, which was but a few doors above that of the plaintiff and the point where the latter attempted to cross; that she observed the plaintiff crossing the street; that she saw her look up and down the street, and proceed as far as the railroad track, where she stopped to allow a car approaching in a northerly direction to pass, and then continued back of the car to the westerly side of the tracks, where the plaintiff was run into by an express wagon and horses attached thereto; that, when plaintiff had reached the tracks, the witness observed the express wagon about the distance of half a block (or upwards of 100 feet, as appears by the diagram submitted) south of the point plaintiff was crossing, being driven along the westerly side of Hudson street in a northerly direction at a running rate of speed, and, as the witness also described it, "like a fire engine going to a fire;" that the driver of the wagon was seated on the top thereof, and that there was nothing to obstruct his view of the plaintiff. Rosenberg, another witness for plaintiff, testified that he was on the street at the time, when his attention was attracted towards the plaintiff by a scream; that he instantly turned about, and saw the plaintiff lying prostrate on the street near the gutter, while the wagon was being driven away from the scene of the accident, and in a northerly direction, with unusual rapidity.

Upon the foregoing facts it was pre-eminently a question for the jury whether plaintiff had taken all the precautions which a prudent person would have employed under like circumstances, and whether or not the accident would have been avoided but for the immoderate rate of speed at which the wagon was driven through a city thoroughfare, or the failure on the part of the driver to exercise due care to avoid injury to travelers thereon, and the motion to dismiss the complaint was properly denied. Nor was the evidence of the carelessness of the driver impaired by the evidence subsequently introduced for the defense. It then appeared that at the time of the accident a prevailing fog partly obscured the street and travelers thereon from view, a circumstance which, instead of justifying a relaxation of caution, only called for the exertion of greater vigilance on the part of both plaintiff and the offending driver, to avoid the risk of injury; and it thus still remained a question of fact for the jury whether ordinary prudence should have prompted plaintiff to still further precaution, or due regard for the life and limb of those entitled to an equal use of the street required the driver of the express wagon to abstain from even the rate of speed which, under less dangerous conditions, may be tolerated. Gilbride, the driver, called as a witness for the defense, attempted to shift the responsibility for plaintiff's injuries upon the driver of another wagon, which he claimed preceded the one driven by him, but his testimony in this respect is wholly uncorroborated by that of any other witness, and is doubly subject to discredit because it is that of an interested person, and in conflict with the admissions made by him to Police Officer O'Brien, who apprehended him shortly after the accident. The jury were therefore not bound to believe him. So, also, was the attempt to show

that plaintiff's injuries were sustained by her through collision with a wagon other than one owned by defendant's association, and under the control of its driver, in direct conflict with the admissions resulting from defendant's failure to deny the allegations of the complaint hereinbefore referred to. It follows, therefore, that when both sides rested the learned trial judge again properly refused to dismiss the complaint.

Defendant urges as ground for a new trial that the learned trial judge unduly emphasized the duty of the driver of a vehicle upon a city street to avoid injury to pedestrians, but a perusal of the charge shows that the jury were properly instructed touching the correlative rights and duties of such persons. We quote from the charge: "It is extremely important, right here, that you should understand the relative rights and duties of pedestrians and drivers of vehicles in the street or highway. I charge you here, the rights of pedestrians and of the owner of a vehicle in the public street—and I don't mean the sidewalk—are equal. You have as much right in the center of the street as a coach driven by a millionaire, and drawn by four horses. You have equal rights in the street. No more the one than the other. What is the duty that the owner of a vehicle owes to the pedestrian? It is the duty to exercise ordinary care, that I have already defined to you, to avoid injury to the pedestrian. And what is the duty of the pedestrian to the owner of the vehicle? It is to exercise and observe ordinary care to avoid being injured by the owner of the vehicle,"—and elsewhere the ordinary care is defined by the trial judge to be that degree of care which a prudent person would exercise under like conditions. Next, defendant urges that the charge was prejudicial to him, because it assumed that the injuries to plaintiff were the result of a collision with a team owned by defendant's association, and in control of its servant. In view of defendant's admission, as hereinbefore pointed out, that such was the fact, an instruction to that effect would not only have been justifiable, but proper. As it is, however, the charge gave defendant the advantage of a defense which he was precluded from making upon the pleadings, for the judge said: "I repeat to you, it is obligatory upon you, in order to give a verdict for the plaintiff, to find that it was the negligence of the defendant that caused the injury. And here pardon me for a moment to revert to the point whether the vehicle of the defendant caused the collision. You will remember the evidence, and my statement of it you must not take if it does not concur with your recollection. Reject it utterly, for it is for you to say what the evidence is in this case, and whether it be sufficient to establish any requisite proposition." Again, defendant urges that, in contrasting the testimony of Tillie Stumpf, a witness for the plaintiff, with that of Gilbride, a witness for defendant, the charge tended to impress the jury with the fact that the trial judge discredited Gilbride. But, be that as it may, it was not improper for the court to call attention to any seeming conflict in the witness' statements; and an instruction that the jury were at liberty to reject Gilbride's testimony altogether, though wholly uncontradicted, would not have been error, since the fact that Gilbride was the person charged with the negligence which resulted in plaintiff's injuries made him an interested witness. *Elwood* v. *Telegraph Co.*, 45 N. Y. 549; *Honegger* v. *Wettstein*, 94 N. Y. 252; *Bank* v. *Diefendorf*, 123 N. Y. 191, 25 N. E. Rep. 402. So, also, defendant complains that it was error for the trial judge in charging the jury to read from an opinion of the court of appeals. It would be sufficient to dispose of this as a ground for reversal to say that no objection was made to the reading at the time, but this court has expressly held in *Anderson* v. *McAleenan*, (Com. Pl. N. Y.) 8 N. Y. Supp. 483, that "it is the duty of the judge to guide the jury; and whether he states the law from his own knowledge and memory, or reads it from decisions, treatises, or his own manuscript, is immaterial. It is within the province of the court to say that a certain case is in its facts very like the case at bar, provided, of course, that it be left to the jury to pass upon the

facts." A number of other alleged errors in the charge and refusals to charge remain, but we have not sufficient time to discuss them in detail. Each of them has been carefully considered, and our conclusion is that the rulings of the trial judge were correct in each instance. The judgment and order appealed from should be affirmed, with costs.