The judgment of conviction should be reversed, and a new trial granted.

---

## Court of Appeals.

### June 4, 1895.

### PEOPLE v. RICHARD LEACH.

#### (71 S. R. 337.)

1. Trial—Charge—Comments of judge.

   The fact that the judge has commented upon the evidence, and, perhaps in some expressions, has indicated the bent of his own mind, is not a subject for adverse criticism, so long as he did not invade the province of the jury and withdraw from them the consideration of any facts, or lead them to suppose that the determination was not wholly with them.

2. Homicide—Proof.

   The evidence, in this case, was held sufficient to sustain the inference drawn by the jury from it, on the defendant's having deliberately murdered the deceased.

Appeal from judgment of the court of oyer and terminer of the city and county of New York, entered upon a verdict, con-

victing the defendant of the crime of murder in the first degree.

Hugh O. Pentecost, for appellant.

John D. Lindsay, for respondent.

GRAY, J.—The defendant was charged in the indictment with having murdered one Mary H. Leach, whose real name was Mary Hope Newkirk, by cutting and stabbing her in the neck with a knife, on the 18th day of November, 1894. Being tried upon the indictment, in the court of oyer and terminer held in and for the city and county of New York, he was found guilty by the verdict of a jury of the crime of murder in the first degree; and thereupon he was sentenced to be executed. From the judgment of conviction the defendant has appealed to this court.

There were no exceptions taken to the rulings of the court during the trial and the only point which has been urged upon our attention by his counsel is an exception to that portion of the charge to the jury wherein the trial judge, as he says, marshalled the evidence against the defendant. A review of the evidence satisfies us that the verdict of the jury was well supported and was the only one which fair and reasonable minds could reach. The defendant was a man of about thirty-two years of age at the time of the killing and had been living with the deceased, in illicit relations, in an apartment at No. 412 West 49th street in the city of New York. On the evening of November 17th, 1894, they were in the rooms of some friends in the same building. A quarrel seems to have sprung up between them, because of some jealousy on her part, occasioned by his manner toward another woman who was present. In consequence, they left and returned to their own apartment. About two o'clock in the morning of November 18th, the defendant walked into the station house of the 22d police precinct, only partly dressed and carrying his shoes in his hands. There was a cut on the left side of his neck and more or less blood was upon his clothes and person. According to the testimony of the captain and sergeant of the police

and of the doorman of the station house, the defendant stated to each that he had killed the deceased; first mentioning her as his wife and then stating that he was not married to her. He told the captain where he would find the deceased. He said to the sergeant and to the doorman that he had sat by the side of the woman until she was dead. To the doorman he said that over an hour had passed since he had killed her and, when asked with what he had cut himself and his wife, he produced from his pocket a knife, with an open and blood-stained blade. Upon going to the apartment of the defendant, the body of the deceased was found upon the bed, entirely naked, except that the lower part was covered by a bed coverlet. The body lay upon its right side and upon the edge of the bed and a handkerchief was clinched in the left hand. Upon the left side of her neck was a deep, long and incised wound about four and one-half inches in length, ragged upon its edges, which commenced from behind the ear and varied in depth; presenting the appearance of several wounds merged into one. The jugular vein had been severed by the cut and death had been caused by the resulting hemorrhage. Blood covered the left side of the bed, pillow slips, bed cover and much of the floor. There was no evidence of any struggle having taken place in the room. There were found a slate and a sheet of paper upon the table in the sitting room of the apartments, upon which the defendant had written in an incoherent and illiterate manner. The contents are not material, nor of a nature to be recited. He stated his love was dead; that he was almost dead and that she had been raped by her uncle. The uncle was charged with being the cause and with having long abused the deceased. The other statements read like the maudlin ravings of a drunken man; with some possible notion of throwing the blame for the act upon the conduct of the uncle of the deceased.

The defendant was examined as a witness in his own behalf and according to his testimony the deceased had committed suicide while affected by whiskey, which she had drunk to excess, after returning to their apartment, and also by his threat to leave her because of her habits. He testified that, upon discovering that the deceased had killed herself in the adjoin-

ing room, he endeavored to take his own life and that while in a dazed condition he had gone to the police station. He explained that he did not send for a doctor, because he found her dead and for the reason that he would not give himself away because he had been harsh to her. He denied remembering having told the police officer that he had killed the woman. He testified that the deceased had made previous attempts to commit suicide; that she had admitted having had continuous illicit relations with her uncle and had been intimate with another man and that, notwithstanding this knowledge, he continued to live with her.

Sufficient of the evidence has been referred to. The facts are not disputed as to the quarrel, the death, and that the defendant's knife had caused the wound. The conflict was as to the mode in which death came to the woman and which the accused stated to have been by the woman's own hand and a further conflict was in his denial that he remembered his admissions to the officers. That conflict in the evidence was for the jury to determine. They were to pass upon all the circumstances of the case and the degree of credibility which they should attach to the defendant's story. If they believed the evidence for the prosecution, the deceased had been killed by the defendant as the result of a quarrel, which took place between them in the evening. That evidence showed, or tended to show, that the defendant had stabbed the deceased in the neck with his knife and the nature of the wound and of the weapon was such as to justify the inference that the stabbing had been deliberately done and with the design to effect her death. Many facts combined to render incredible the story of the defendant. There was the writing found upon the slate and sheet of paper, in which he speaks of her death and yet does not suggest that she had committed suicide; which would have been a most natural statement to make, especially as he attempted, or pretended to attempt, it himself. When at the station house and in the hospital, where he was for nearly three weeks, while receiving medical care for his wound, and when taken thence to the police court to answer to the charge, he makes no statement that the deceased had killed herself.

Nor does he make it to any person, until his attorney was preparing for his trial. Had such been the fact, it is inconceivable that he should not have stated it, either when he went to the station house to tell of the occurrence, or at some time before he confided it to his attorney. It was the defendant's knife which had caused the wound upon the deceased and the situation of the wound itself as well as the nudity and the position of the body of the deceased, were circumstances which militated against the probability of the wound having been self-inflicted and with suicidal intent.

Without commenting further upon the evidence, it is sufficient to say that the inference drawn by the jury from it, of the defendant's having deliberately murdered the deceased was just and reasonable.

The criticism upon the charge of the learned trial judge is, not that he had improperly stated the facts but, to quote the language of the defendant's counsel, that the evidence was marshalled a little against the defendant, the way the evidence was put together: When the defendant's counsel, upon the close of the charge, had excepted to that portion which consisted of the marshalling of the evidence, the trial judge asked him to point out any fact that was improperly stated, in order that he might correct it, saying, "if I have improperly stated any fact I wish to correct it." In response to the remark of the defendant's counsel that the evidence was "marshalled" against the defendant, the trial judge replied, and these remarks, although not the subject of an exception have been pressed upon our consideration as having prejudiced the minds of the jurors and as disabling them, as the expression of an opinion by the trial judge, from reaching a fair verdict, "if the facts are against the defendant, that is not my fault; it is unfortunate but I cannot help it." The charge was a clear, logical and fair statement of the facts in evidence before the jury; and they were instructed that it was for them to find from those facts whether or not the defendant was guilty. They were cautioned against being influenced by the opinion of the court and were admonished that it was for them to draw the conclusions from the evidence. It was the duty of the trial judge

to present the evidence to the jury and that would have been unintelligently done, if he had not presented them in what seemed their logical order, or in the natural sequence of events. That he should have commented upon the evidence, and, perhaps in some expressions, have indicated the bent of his own mind, is not a subject for adverse criticism, so long as he did not invade the province of the jury and withdraw from them the consideration of any facts, or lead them to suppose that the determination was not wholly with them. For the trial judge, therefore, to answer the criticism of the defendant's counsel as he did was natural and quite unobjectionable. The whole case, as made by the evidence given in behalf of the prosecution and of the defendant, is bare of any fact or feature to raise it above the level of a vulgar crime, committed as the result of a drunken brawl. That the defendant may have been influenced to the commission of his atrocious crime by resentment at the woman's habits of drunkenness and immorality, does not tend to relieve the case of its brutal features. He had continued to live with her as his mistress, after receiving her confessions of continuous illicit relations with her uncle. It would be difficult to have arrayed the facts in evidence in any way before the jury, without their suggesting by their own force the willful commission of a disgusting and brutal crime; for the commission of which there were shown to have been several motives and the opportunity, and where all the circumstances pointed to the defendant's guilt.

We see no occasion to interfere with the execution of the judgment of death. The defendant has had a fair trial and has been convicted upon evidence which should satisfy the fairest mind as to his guilt. The judgment appealed from by him should be affirmed.

All concur.

Judgment affirmed.

### NOTE ON "COMMENT OF COURT UPON EVIDENCE."

Court is not bound to comment upon evidence. People v. Kemmler, 119 N. Y. 580; 30 S. R. 198.

Judge may state his impressions, if he leaves it to jury to come to their own conclusions. Fitzgerald v. Fachs, 29 S. R. 526.

Court may comment upon testimony, so long as he leaves question of fact to jury and instructs them that they are sole judges thereof. People v. Fanshawe, 65 Hun, 77; 47 S. R. 331; 8 N. Y. Cr. 326; aff'd 50 S. R. 1.

Judge may comment upon, and even express opinion as to evidence, if he confines its force and effect to jury. Hart v. Ryan, 25 S. R. 886.

Court may call attention to any seeming conflict in testimony of witness. McManus v. Woolverton, 47 S. R. 107; aff'd, 53 S. R. 930.

When comments of court upon evidence no ground for reversal. People v. Fleming, 37 S. R. 655.

It may read to jury from opinion of court of appeals. Id.

Trial judge should present evidence with such comment as will enable jury to see its relevancy and pertinency. People v. Fanning, 131 N. Y. 659; 43 S. R. 771; 8 N. Y. Cr. 363.

He should not refrain from so doing because it may bear hardly upon accused. Id.

Court may call attention of jury to fact that defendant's story was uncorroborated and was incapable of corroboration. People v. Rohl, 138 N. Y. 616; 52 S. R. 147.

Court may refer simply to such portions of testimony as will illustrate questions of law which it is necessary to present to jury. People v. McGonegal, 42 S. R. 307.

Reference by judge, on trial on indictment for larceny, to omission of defendant to furnish exculpatory evidence, proper. People v. Cassin, 42 S. R. 133; aff'd, 49 S. R. 913.

Leaving question to jury, at conclusion of charge, obviates prejudicial effect of calling declarations of accused strong evidence against him. Id.

Court has right to tell jury, as matter of law, if evidence justifies it, that such evidence, if believed, makes out crime described in indictment. People v. Cannon, 139 N. Y. 645; 54 S. R. 809; see 54 S. R. 431.

Intimation of opinion or comment upon evidence, though unfavorable to applicant, furnishes no ground for reversal in court of appeals. Hurlburt v. Hurlburt, 40 S. R. 436; aff'd, 18 S. R. 407.

Mere statement of opinion by judge concerning evidence is not subject to valid exception, where charge directs all essential facts to be determined by jury. Quill v. N. Y. C. & H. R. R. R. Co., 32 S. R. 612.

Court should not express opinion on value of medical testimony. People v. Webster, 59 Hun, 398; 36 S. R. 834.