<div style="margin-right:0">
NEW-YORK,
May, 1820.

PEOPLE
v.
COTTERAL.
</div>

---

## The People *against* Isaac Cotteral *and* Peter Crannal.

THE prisoners were convicted of *arson*, at the last Court of *Oyer and Terminer*, held in *Rensselaer* county, before Mr. Chief Justice *Spencer.*  The prisoners were brought up on *habeas corpus*, &c. and from the returns to the writs of *certiorari*, it appeared that the indictment contained three counts : 1. for setting fire to a certain inhabited dwelling house of *Jacob Deforest*, in *Troy*, on the 3d of *March*, 1820, and thereby feloniously, wilfully, and maliciously burning, consuming, and destroying the same : 2. for setting fire to the *gaol* of *Rensselaer* county, in *Troy*, being the ch. 29.) though the *gaol* is to be deemed an inhabited dwelling house, within the act.

<div style="margin-right:0">
Setting fire to a gaol by a prisoner, merely for the purpose of effecting his escape, is not *arson*, nor is it a *wilful burning of an inhabited dwelling house,* within the meaning of the first section of the act declaring the punishment of crimes; (1 *N. R. L.* 407. sess. 36.)
</div>

NEW-YORK, dwelling house of *Jacob Deforest,* inhabited by him and his
May, 1820. family, and feloniously burning the same : 3. stating that
THE PEOPLE the prisoners, with others, were confined in the said gaol, and
v. on the 2d *March,* feloniously, wilfully, and maliciously set
COTTERAL. fire to the same gaol, being the dwelling house of *Jacob
Deforest,* the keeper of the gaol, and inhabited by him and
his family, and the prisoners of the county of *Rensselaer,*
confined by civil and criminal process ; the same gaol being
contiguous to other buildings, &c. with intent to burn, con-
sume, and destroy the said gaol, &c.

It appeared that *Cotteral* was confined for horse stealing,
and *Crannal* for an assault and battery, with ten others, in
the second story of the gaol. That in the room in which
the prisoners were confined, upright planks on the inside of
the brick walls were fastened with spikes to timber ; plates
of iron were then fastened to the planks, and another tier
of planks laid transversely over the iron bars. On the
night of the 28th of *February,* the prisoners took coals of
fire from the stove, and put them into the crack between
the planks lining the room, and blew the coals into a flame ;
their intention being to burn a hole large enough to admit
a lever, so as to force off the plank, and by that means to
effect their escape ; but not succeeding, the fire was extin-
guished by them : and a similar attempt was made by the pri-
soners, on the night of the 2d of *March.* A quantity of water
had been saved by the prisoners out of their allowance, and
as the fire increased, they threw on water to prevent its
blazing and spreading. They succeeded in burning a hole
through both tiers of planks, large enough for a man to pass
through, and had forced up one of the iron bars and re-
moved one of the bricks in the wall, when, about 3 o'clock
in the morning of the 3d of *March,* one of the watchmen
discovered a smoke issuing from the gaol, and gave the
alarm of fire. The prisoners having expended all their
water, the fire blazed through the planks to the top of the
room, so as to be beyond their control, and the gaol would
most probably have been consumed, had it not been for
the exertions of the citizens, who extinguished the fire, be-
fore any material injury was sustained.

NEW-YORK,
May, 1820.

THE PEOPLE
v.
COTTERAL.

The jury found the prisoners guilty; and on the facts above stated, specially found, the Chief Justice suspended the sentence, in order to take the opinion of the Court on the question of law, as to the malicious intent, so as to constitute the crime of *arson*, within the meaning of the statute.

*Oakley*, Attorney General. The first section of the act, (1 *N. R. L.* 407. sess. 36. ch. 29. s. 1.) creates a new crime different from the common law offence of *arson*. It declares that any person duly convicted " of *wilfully burning any inhabited dwelling house*, shall suffer death for the same." As the keeper lived in the gaol, with his family, it was an inhabited dwelling house within the meaning of the act. (*People* v. *Van Blarcum*, 2 *Johns. Rep.* 105.) The prisoners may have had no intention to burn the gaol, further than was necessary to effect their escape; but it is not requisite that the house should be absolutely consumed or burned up, to constitute the crime of arson. (*The People* v. *Butler*, 16 *Johns. Rep.* 203.) The act speaks only of a *wilful* burning; the legislature presumed, no doubt, that no person could set fire to an inhabited dwelling house, without a *malicious* intent. The common law offence of *arson* is defined to be the malicious and voluntary burning the house of another. (2 *East C. L.* 1015.) But under the first section of the statute, intentionally seting fire to an inhabited house, is a wilful burning, without any regard to the object in view. But if malice were necessary, it must be implied in this case. If a person who is confined for a felony, breaks the gaol, it is a felony. The prisoners were attempting to break the gaol, and must, therefore, have had a felonious intent. (*The People* v. *Duell*, 3 *Johns. Rep.* 449. *Hawk. P. C. B.* 2. c. 18. *Hale P. C.* 607. 612. 2 *Chitty C. L.* 79.) If a person, by shooting at the poultry of another, with intent to steal it, sets fire to the thatch of a house, it is arson. (2 *East's C. L.* 1019.) So, if *A.* maliciously intends to burn the house of *B.* and the fire burns the house of *C.*, it is a malicious burning of the house of *C.* So if a man sets fire to his own house, by means of which his neighbour's house is burned, it is arson. (2 *East*

*C. L.* 1028. 1031.) It makes no difference whether the primary act is a misdemeanour or a felony. It is enough that the party is doing an unlawful act. A general malicious intent, is enough to show particular malice. (1 *East C. L.* 230.) If this had been an indictment at the common law, there could have been no doubt of the malicious intent, so as to constitute the offence of arson.

At a late *Oyer* and *Terminer*, held in *Oneida* county, before Mr. Justice *Platt*, a prisoner who with a view to effect his escape, had set fire to the gaol, in consequence of which one of his fellow prisoners was burnt to death, was tried for murder, and convicted, though he had no particular intention to hurt or burn his fellow prisoner.

*Griffin* and *Wells*, contra. If the attempt to break the gaol was a felony, this may be, perhaps, considered as a wilful and malicious burning; but the statute (1 *N. R. L.* 407. 412. sess. 36. ch. 29. s. 20.) merely makes it unlawful to be aiding or assisting a prisoner to escape. A bare attempt to escape from prison is not felonious. If a felon attempts escape himself, without aiding or assisting another felon to do so, it is not felony. The first section of the act does not create a new offence; it merely selects a more aggravated species of arson. If we look to the common law definition of the crime, we find that the word *wilful* is the all important and essential part of it; and that is the word used by the legislature. Malice alone is not sufficient. The act must be wilful. There must be a certain and precise intent. The legislature contemplated the direct intent to commit the specific crime of burning an inhabited dwelling house. By annexing the highest punishment known in the law to the commission of the offence, they must have had in view the diabolical act of setting fire to an inhabited house, with a direct and specific intent to burn or consume it. Putting fire in such a place, as might possibly burn the house, without any intention to consume it, is not a wilful burning. Putting fire to a dwelling house, if it does not take effect, is not arson. A *fortiori*, if the person who puts the fire in a situation to burn, does himself extinguish it. If he takes the benefit of the *locus pœni-*

*tentiæ,* if we may be allowed so to speak, and while it is in his power, prevents all evil consequences, he ought not to be deemed guilty of so heinous a crime as that of arson. The prisoners did not intend to burn the gaol ; their object was to escape, and they made use of the fire, as an instrument merely to effect that purpose. Suppose a tenant about leaving a house, with a view to deface a room, should set fire to it, and then put it out, is this to be deemed a wilful burning, for which he is to suffer death ? So if a robber, having entered an inhabited dwelling house in the night time, accidentally sets fire to it with a lighted candle, but himself extinguishes the flame, is he to be punished, under the first section of this act, for a wilful burning of the house ? There may be an implied or constructive malice, but there is no implied or constructive will or intention. The prisoners willed, or did not will, to burn up the gaol. To constitute murder, there must be not only a malicious killing, but a killing, *eo animo.* Here there was no will or intent to burn the gaol, or to commit arson.

The law, as to this crime, is more severe than in regard to murder. If a man attacks another with intent to kill him, but does not consummate that intention, it is not murder. So if a person administers poison to another, with intent to kill him, but the poison produces no effect, it is not murder; but if a man sets fire to an inhabited house, though it is not consumed, it is arson. The law being then so rigorous and severe in regard to this crime, it ought not, by any construction, to be extended further In the case of *Rose Butler*, the fire was extinguished by the exertions of the family, not by the prisoner. The case put from *East*, as to a person feloniously shooting at poultry, and thereby setting fire to a thatched cottage, is stated without any authority cited to support it.

*Oakley*, in reply, said, that the crime was consummated the moment the fire took effect; and in regard to this crime, it makes no difference whether the whole or a part of the house is consumed. If the crime is once consummated, there can be no *locus pœnitentiæ.*

NEW-YORK,
May, 1820.

WARD
v.
STOREY.

SPENCER, Ch. J. delivered the opinion of the Court. A wilful setting on fire an inhabited dwelling house, though the fire should afterwards go out of itself, or be extinguished by another, would constitute the crime of arson. And it has been decided by the Court, that a gaol is an inhabited dwelling house within the meaning of the act. But this case stands on peculiar grounds. It does not appear to have been the intention of the prisoners to burn the gaol. Their original and primary intention was to effect their escape, and the burning was merely for that purpose. It lay on the prisoners to show that it was no part of their intention to burn the gaol, and we think they have done so. The statute makes it felony, for a person to aid or assist a felon to escape from prison; but neither by the statute nor the common law, is the attempt of a felon to escape a felony. We think it would be carrying the doctrine too far, to say that setting fire to a prison by a prisoner, merely for the purpose of effecting his own escape, amounted to the crime of arson. Judgment must, therefore, be arrested.

                                        Judgment arrested.

N. B. It appearing that the prisoner, *Cotteral*, had been convicted of horse stealing, he was sentenced to the state prison for ten years; and the other prisoner was remanded.