Jenkins *vs.* The State of Georgia.

PAUL JENKINS, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

1. If a prisoner burn a hole in the door, or attempt to burn one through the floor of a guard-house, situate in an incorporated town, merely for the purpose of effecting his escape, and not with the intent to "consume or to generally injure the building," and neither of such results occur, he is not guilty of the offense of attempting to burn a house, as defined in sections 4376 and 4381 of the Code.

2. The crime of which the prisoner was convicted is not sufficiently proved by the evidence to justify the verdict of guilty.

Criminal law.   Arson.   New trial.   Before Judge HILL. Houston Superior Court.   May Term, 1874.

Paul Jenkins was placed on trial for the offense of arson, alleged to have been committed upon the guard-house, in the town of Fort Valley, on March 22d, 1874. The defendant pleaded not guilty. The evidence made the following case:

The guard-house referred to in the indictment had two doors to it, an outer and an inner door. On the day alleged the inner door was discovered to have a hole burned 'through it about one foot in diameter. The floor at the back of the room was also burned. At that point ignited matches were discovered. Burnt paper was found between the outer and inner door; also on the floor. Playing cards were also on

the floor. The defendant was the only occupant of the guard-house. Fire could not have been communicated to the points above designated from without. Before the burning at the back of the room was discovered, the defendant stated that the inner door became ignited from lighting his pipe. After the attempt to burn the floor was perceived, he offered no explanation. The house is within the corporate limits of the town of Fort Valley. Had the guard-house been burned, it is probable that no other house would have been ignited. It is a small one-room brick house, twelve by fifteen feet. The defendant was not drunk when he was discovered, but looked as if he had been. There was one window to the house—one foot by two—with bars one-fourth of an inch apart. The outer door was covered with tin; the inner door was of two inches pine plank; one and one-half or two feet between the doors. The fire was out when the house was entered.

The jury returned the following verdict: "We, the jury, find the prisoner not guilty of arson, but of the attempt to burn, and we recommend the court to commute the sentence from hanging to imprisonment for life."

The defendant moved for a new trial because the verdict was contrary to the law and the evidence. The motion was overruled, and the defendant excepted.

DUNCAN & MILLER, for plaintiff in error.

W. S. WALLACE, solicitor general *pro tem.*, by W. B. HILL, for the state.

TRIPPE, Judge.

1. The attempt "to burn a house," referred to in section 4376 of the Code, must mean an *attempt to commit* the burning defined in section 4381, that is, "to consume or generally injure the house." One is not guilty of the crime of burning unless "the house is consumed or generally injured." If the offense of burning requires a total destruction or general injuring of the house to make it complete, then the attempt to

burn involves the intention to destroy or to generally injure. If the facts fall short of proving this intent, then the crime of attempted arson is not proved. Rape is the carnal knowledge of a female forcibly and against her will. An attempt to commit rape implies the intent to have that knowledge forcibly, etc. An assault with intent to murder must have in it all the elements which constitute murder, except the death of the party assaulted. So an attempt to commit arson must have all the features of arson except the actual destruction or the generally injuring of the house—that is, it must be shown to have been the intent of the defendant to do one or both of those things. So thought the supreme court of North Carolina, in the case of The State *vs.* Mitchell, 5 Iredell, 350. There the defendant was indicted for burning the jail in which he was confined. The door of the room in which he was placed and the ceiling of that room were partially consumed. The question raised was, that if the prisoner only intended to burn off the lock, so he could escape, and not to burn down the jail, he was not guilty. A contrary charge was given to the jury, and on a review of the case, the supreme court held that if it was not the intention of the prisoner to burn or destroy the jail, but he put fire to the lock to burn it off to effect his escape, and not to destroy, the felony was not complete. It was added by the court that if the prisoner willfully put fire to the jail with the intent to effect his escape by consuming or destroying it, he would be guilty if the jury should believe that his secondary intent was to burn and destroy the jail, although his main intent was thereby to effect his escape. This qualification was correct. The court referred to the case of The People *vs.* Cotteral, 18 John. 115, as an authority for the decision. That case does sustain the one quoted from Iredell, and asserts the same principle. The North Carolina case discusses the matter at length, both on principle and authority, and we think the conclusion is right. It is unnecessary to review the testimony contained in the record to show that, as it appears, this intent on the part the defendant in this case was not sufficiently shown to au-

thorize a conviction involving life or imprisonment for life. It may be stated that the place where the attempt to set fire was made, the fact that there were materials unconsumed whereby the fire might have been continued, especially when taken in connection with the statement made by the chief witness for the state, that he thought the defendant "attempted to burn a hole," make it doubtful whether it was the intent of the prisoner, in the language of the Code, to consume or generally injure the house. This statement was made by the witness without objection, and after he had given a detailed account of all that he saw and the appearance of everything connected with the jail.

2. At any rate, under this testimony, where such consequences are involved, we think that an investigation on another trial would be best.

Judgment reversed.