THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. JOHN M. D. FANSHAWE, Appellant.

*Arson in the first degree — proof as to intent to destroy — ownership of a building — rejection of a juror — appeal from such decision — opinion of a witness — summarizing the testimony — Penal Code, secs. 486, 488, 490.*

The Penal Code (§ 486) provides that " a person who willfully burns or sets on fire in the night-time  *  *  *  a dwelling-house, in which there is at the time a human being,  *  *  *  is guilty of arson in the first degree."

Section 488 of said Code provides that " a person who willfully burns or sets on fire  *  .*  *  a building, structure or other erection, which is at the time insured against loss or damage by fire, with intent to prejudice the insurer thereof,  *  *  * is guilty of arson in the third degree."

Section 490 of said Code provides that " the burning of a building, under circumstances which show beyond a reasonable doubt that there was no intent to destroy it, is not arson."

The evidence upon the trial of an indictment, charging a prisoner with the offense of arson in the first degree, tended to show that the prisoner, who was occupying a room in a lodging-house, set the premises on fire in several places with an intent to secure insurance which he had placed upon his personal property therein. The fire was extinguished without doing much general damage.

The prisoner's counsel claimed that section 490 applied to every degree of arson, and that the burden rested upon the people to allege and prove an " intent to destroy " the building; and, further, that if the prisoner in this case was guilty of any crime it was that of arson in the third degree, as defined in section 488.

*Held*, that this position was untenable.

That, in order to establish the crime of arson in the first degree, the only elements necessary to be established were that the prisoner willfully set the premises on fire in the night-time, and that the premises were a dwelling-house in which at the time there was a human being.

That an intent to destroy the building need not be alleged or proved.

*Semble*, that, in the absence of the statute, the intent could be inferred from the fact itself.

That section 486 was practically a re-enactment of the law as it existed in the Revised Statutes before the Penal Code.

*People* v. *Cotteral* (18 Johns., 115) disapproved.

That section 490 contained no part of the definition of arson in the first degree, and related only to non-willful as opposed to willful acts of burning and setting on fire.

That an indictment which charged the prisoner with having set on fire a dwelling-house stated in one count to belong to Ellen R. Van Duzer, and in another count to belong to Frank B. Doughty, where it was apparent from the location, the similarity of dates, and the identity of the persons stated to have been in the house, that the same house was meant in each count, did not charge two distinct offenses of arson, nor present a case where the district attorney should have been compelled to elect as to the count upon which he would try the prisoner.

That where the answers of a juror indicated that his mind was not in a condition to be guided by the instructions of the court upon questions of law, it was not error to exclude him.

That a decision of a trial judge as to the indifference of a juror is not reviewable upon appeal, unless there is no evidence to support the decision.

A witness who described the condition of the prisoner's room just after the fire was asked whether the bed appeared as if any body had recently been sleeping in it, and was allowed to answer that it looked to him as if no person had slept in it for any length of time.

*Held*, that the question was competent.

*Semble*, that the evidence was not a mere expression of opinion and was admissible.

It is not improper for the trial judge to summarize testimony about which there is no dispute, nor to marshal the evidence so that the jury may reach a conclusion intelligently.

Appeal by the defendant John M. D. Fanshawe from a judgment of the Court of General Sessions of the Peace of the city and county of New York, rendered on the 26th day of May, 1891, convicting him of the crime of arson in the first degree, and sentencing him to imprisonment in a State prison at hard labor for the term of twelve years and six months.

*Charles W. Brooke*, for the appellant.

*Henry B. B. Stapler*, for the respondent.

O'Brien, J. :

The great number of questions presented by the defendant appellant, including, among others, the contention that the verdict was against the law and against the evidence, and that the indictment itself was materially defective, will necessitate not only an examination of the latter, but also a review of all the evidence in the voluminous record presented.

At the outset a statement of the facts proven will be necessary, in order to make a disposition of the motion made by counsel for defendant, at the close of the case for the prosecution, to direct a verdict of acquittal upon the ground stated, " that where it appears beyond all reasonable doubt that the object of firing, setting fire to the premises, burning a building under circumstances which show beyond a reasonable doubt that there was no intent to destroy it," is not arson in the first degree as defined by law. The authority for a motion of this kind is said to be section 410 of the Code of Criminal Procedure, which provides that " if at any time after the evidence on either side is closed, the court deem it insufficient to warrant a conviction, it may advise the jury to acquit the defendant, and they must follow the advice." That no injustice may be done the prisoner by summarizing the evidence ourselves, or taking the version presented by the district attorney as to what the evidence for the prosecution showed, we will confine ourselves to what, according to the counsel for the prisoner, such testimony proved to be the facts presented upon the trial in support of the indictment.

Early in the morning of the 3d day of February, 1888, between the hours of two and three o'clock in the morning of said day, fire

was discovered in the premises No. 50 East Twenty-ninth street in the city of New York; said premises were situated on the south-west corner of Twenty-ninth street and Fourth avenue, and the fire was in the room occupied by the defendant, facing on Twenty-ninth street, and one story above said street. The first person who saw the fire from the outside of said premises was De Witt C. Wheeler, Jr., a witness called on behalf of the people. He was returning home from drill at the armory of a regiment to which he belonged when his attention was attracted by a blaze in the window of the premises indicated. He saw a man in the window, who was at that time in his shirt sleeves, whom he subsequently recognized as the defendant, and the man cried out to him and asked him to send an alarm of fire, which he did. Shortly afterwards he saw the same man seated on the window sill partially dressed, to whom he called out not to jump. The firemen arriving shortly afterwards, and a ladder being raised to said window the defendant went down said ladder, and witness then discovered that he was in his stocking feet. The night being an extremely cold one he took the man over to a drug store on the diagonal corner from said premises for the purpose of getting him something to drink. Upon the arrival of the firemen the fire was quickly extinguished, and it was found to be mainly confined to the room occupied by the defendant, and around the western jamb of the door leading into the hall, immediately adjoining defendant's room; and traces of fire were discovered crossing diagonally upon the surface of the carpet upon said hallway, and in a direction from south-east to north-west. Fire was also discovered in a closet under the stairs leading from the second floor to the third, and also upon one or two of the lower stairs of said stairway. These fires were manifestly of an alcoholic flame, and were extinguished by Frank B. Doughty, one of the lodgers in said house, before the arrival of the firemen. The fire partially destroyed a trunk and its contents, the property of· the defendant, and some other personal property of the defendant contained in his room at that time. The house in question was a lodging house conducted by Miss Ellen R. Van Duser, and at the time of the occurrence of the fire there were some fifteen or twenty lodgers occupying said premises, among whom was a sister of the landlady, known as Miss Lollie, who was a person of feeble intellect.

described by the witness Doughty as being an imbecile, and by her sister, Miss Van Duser, as having the intellect of a child of seven.

The entrance to the premises was on Twenty-ninth street, and it was the custom to leave the door on the latch. It was not a Yale latch, but an old-fashioned, ordinary latch — a simple lock. Some time prior to the fire the policeman on the beat found the door open, and notified the landlady. Defendant, a young man of about twenty-nine years of age, was employed at the time as a clerk in the Knickerbocker Fire Insurance Company.

The defendant had effected two insurances upon his personal effects, wearing apparel, jewelry, etc.; one for $1,000 in the company in which he was employed, and one for $1,000 in the Phœnix Fire Insurance Company. It appears that the companies do not charge any greater rate of premium for insuring $1,000 than for any sum under $1,000.

At about nine o'clock on the morning on which the fire occurred, as the defendant was going out, he was called into Miss Van Duser's room, which was on the ground floor, and was there confronted by Miss Van Duser and Mrs. Lizzie S. Courtney, one of the lodgers in the house, and upon the defendant expressing his regret that Miss Van Duser should have been put to any loss, Mrs. Courtney said to him: "Mr. Fanshawe, the only way you can do anything for Miss Van Duser is to make good what you have destroyed." Whereupon the defendant said: "Do you mean to say that I fired the room?" To which Mrs. Courtney replied: "No; I don't mean to say that; but I mean to say that if the fire had occurred in my room, under the circumstances it has in yours, I should feel compelled to make some explanation, or lie under a cloud." Some other conversation was had between the witness and the defendant, and it was this witness that advised Miss Van Duser to cause Mr. Fanshawe's arrest.

The adjuster of the insurance companies, Mr. James W. Stevens, after an examination of the debris, estimated the sound value of everything of which he could find a trace at $261.25; but on the night of the fire the trunk was thrown out of the window, and the examination upon which Mr. Stevens based his estimate of the sound value was not made until the 10th day of February, 1888,

and the premises had been meantime in the possession of the landlady, and were accessible not only to all the lodgers, but were visited by workmen engaged in repairing the damage done by the fire. And it appears that the only experience Mr. Stevens had as to the value of clothing, wearing apparel and personal effects, prior to his engaging in the business of insurance adjuster, was that derived from keeping a country store in Staten Island; and that although the defendant had furnished him with the bills of goods which he claimed were destroyed, with the tradesmen's names, he never took any steps to ascertain whether those goods were really furnished him or not. Subsequently, and in May, 1888, the insurance companies settled the loss by paying $350 to Mr. James M. Lyddy, at that time counsel for the defendant, and to whom the policies had been assigned.

Some of the lodgers, notably Mrs. Courtney, testified that the defendant was fully dressed, and this may well have been, since the witness testified that at the time she thus described his appearance it was five o'clock in the morning, and, since the fire took place between two and three, he had an abundance of time to complete his toilet. Evidence of witnesses for the prosecution was given to the effect that the defendant's manner was calm and collected. Testimony was also offered by the prosecution, indicating that the bed in defendant's room was in a condition that would seem to indicate that it had not been occupied that night. But this is also contradicted by Roskoph, who says that the bed appeared to have been slept in, and the bed clothing partially turned back; and by William Simpson, a witness called on behalf of the people, who testified as follows: "It looked to me, sir, as if no person had slept in it for any length of time, more than a few minutes; or it just appeared to me as if the party — as if there had been somebody in the bed, but not for a whole night."

We do not understand that the appellant contends that this evidence was not sufficient to justify the conclusion that the firing of the house was done by him; the claim being, as we take it, that such evidence showed that the motive actuating the prisoner was a desire to defraud the insurance company, and that the evidence did not show beyond a reasonable doubt that it was done with an intent to destroy the building, and, therefore, that it did not support the indict-

ment for arson in the first degree, but only sustained one for arson in the third degree; and as the law would not permit a conviction of the latter offense upon an indictment charging arson in the first degree; that the appellant was entitled to have the motion for an acquittal granted. (*Dedieu* v. *People*, 22 N. Y., 178.) With respect to the error thus assigned in the refusal of the learned recorder to adopt appellant's view of the law of arson, we are confronted with the principal and oft-reiterated ground relied upon for a reversal of the judgment; and it is proper that the question thus presented should be here disposed of.

Sections 486, 487 and 488 define arson in its three degrees, but reference need not herein be made to section 487, relating to arson in the second degree. With respect to arson in the first degree the Penal Code (§ 486), says: "A person who willfully burns or sets on fire in the night-time, either (1) a dwelling-house in which there is at the time a human being, or (2)   *   *   *   is guilty of arson in the first degree." Section 488, defining arson in the third degree, says: "A person who willfully burns or sets on fire, either (1) a vessel or other vehicle, or a building, structure or other erection, which is at the time insured against loss or damage by fire, with intent to prejudice the insurer thereof,   *   *   *   is guilty of arson in the third degree."

Had we to deal exclusively with these sections of the Penal Code, no doubt would arise but that the view taken by the learned recorder, which was consistently adhered to throughout the trial, was correct, that to establish the crime of arson it was necessary to charge the prisoner with, and to establish by competent evidence, that the defendant willfully, that is, intentionally, did burn or set on fire, in the night-time, the premises described in the indictment; and, second, that the premises at the time of burning or setting the same on fire were a dwelling-house in which, at said time, there was a human being. Both these questions, he charged, should be answered in the affirmative before the defendant could be convicted of the crime charged.

The appellant insists that the Penal Code, by section 490, has added another element, which the trial judge deliberately ignored and refused to consider as in any way qualifying or destroying the definition of arson as given in sections 486 and 488. This section 490 provides that " the burning of a building under circumstances

which show beyond a reasonable doubt that there was no intent to
destroy it is not arson." It is claimed by the appellant that this
section 490 is to be construed as though its language were, in fact,
incorporated in sections 486, 487 and 488; that it is an important and
imperative part of each of these sections, and that it declares that if
the intent to destroy the building is not proven beyond a reasonable
doubt, the offense is not arson. The learned recorder refused to
take this view of the sweeping effect of section 490, and held, as
already shown, that nothing more was necessary to be proven in the
case than that the defendant did willfully or intentionally burn or
set on fire, in the night-time, the premises described in the indict-
ment, and that such premises were a dwelling-house in which at the
time there was a human being; and he refused to rule that it was
incumbent upon the prosecution to prove, or that it was an essential
element of the crime of arson in the first degree and necessary to
be inserted in the indictment, that beyond all reasonable doubt the
burning or setting on fire was with an "intent to destroy the
building."

There can be no room for discussion, if a conclusion is reached
that section 490 introduces another constituent element of the crime
of arson, in addition to those contained in the definition to be found
in sections 486 and 488, that then this judgment must be reversed,
for the reason that it is a well settled rule of criminal pleading that
an indictment upon a statute must state all the facts and circum-
stances which constitute the statutory offense; and that if the
"intent to destroy the building" be an absolute prerequisite, it
would be necessary to set forth such intent in the indictment itself,
and upon the trial to present competent evidence to establish such
intent. As stated by the court in *People* v. *Johnson* (1 Parker
Cr. Rep., 564): "We deem the rule well settled both upon authority
and principle, that every fact or circumstance which is a necessary
ingredient of the offense, should be averred in the indictment. If
any fact which is a material ingredient to constitute the crime is
omitted in the indictment, such omission vitiates it, and the defend-
ant may avail himself of such defect by demurrer, writ of error, or
on a motion in arrest of judgment."

The question therefore is, whether any conviction of the crime
of arson can be had in this State, where the indictment is down in

the language of section 486 of the Penal Code defining arson in the first degree, and the evidence shows that the motion for setting fire to a building was to accomplish a result other than the destruction of the building. In every form in which the question could be raised upon the record, the appellant contended below, and he still contends here, that section 490 is to be construed to mean that, unless there is an intent to destroy a building willfully set on fire, such willful setting on fire of such building is not arson.

Section 486 of the Penal Code, defining arson in the first degree, is a practical re-enactment of the provisions of the Revised Statutes (2 R. S. [1st ed.], 657, pt. 4, chap. 1, tit. 1 § 9); and prior thereto the law declared "that any person who shall be duly convicted of willfully burning any inhabited dwelling house shall suffer death" (Revised Laws of 1813, p. 407). In construing "the act declaring the punishment of certain crimes (Revised Laws of 1813, p. 407) in the case of *People* v. *Butler* (16 Johns., 203), which arose in 1813, the court in the course of the opinion said : "It is well settled that to constitute the crime of arson it is not necessary that the house should be absolutely consumed or burned. It is enough if the fire is applied with a malicious intent so as to take effect, though only a part is consumed." In the *People* v. *Jones* (2 Edm. Select Cas., 86), which arose under the Revised Statutes in 1849, a case relied upon by the trial judge below, EDMONDS, J., in charging the jury, says : " When it was clearly made out, as it was here, that the firing the house was willfully done, it was of no consequence what was the motive for, or intention of, the act ; nor was it even necessary to prove that the prisoner knew that the building was inhabited. The fact that it was so was all that the law required to be made out. The motive of the prisoner, then, for perpetrating the offense, or his condition of intoxication, were alike excluded from consideration by the language of the statute defining the crime."

In addition to the statutes and the decisions construing them since 1813, at least in this State, it has never been held necessary, in order to establish the crime of arson, nor was it necessary to constitute arson at common law, to prove that there was an intent to destroy the entire building ; nor was it necessary to show that it was wholly consumed ; all that was essential was to establish that it was willfully burned ; this being subsequently enlarged by the Revised

Statutes, which added the words "set on fire," and framed the statutory definition in practically its present form, so that the crime would thus consist either in willfully burning or setting on fire a building. Were it of any advantage, we might show, in addition to the statutes and the long line of authorities, that all text-writers in discussing what constituted arson agree substantially with the definition given by Russell on Crimes (vol. 2, p. 1024 [9th Am. ed.]) wherein it is said: "The burning of a house necessary to constitute arson at common law must be an actual burning of the whole or some part of the house  *  *  *  but it is not necessary that every part of the house should be wholly consumed or that the fire should have any continuance; and the offense will be complete though the fire should be put out or go out of itself." (See, also, Roscoe's Crim. Evidence [8th ed.], 407; Wharton's Crim. Law, § 826.)

A strong argument is thus furnished against the contention of the appellant, growing out of the fact that if the effect claimed by him is given to section 490, it will abrogate and destroy all statutory and well settled authoritative definitions of the crime of arson.

Such a radical change is not to be presumed or inferred from some statutory provision unless its meaning and bearing are so direct and plain as to leave no option in the court but to give effect to its language, even though such effect may result in disturbing other well-defined enactments. It is always competent for the court, as it is its duty, to have in view the purpose and intent of the legislature, and where statutes or sections apparently inconsistent, can be construed so as to have them both stand, such a construction should be given them. The language of section 486 is apparently inconsistent with that of section 490, and the definition of the crime of arson as given in the first section is seemingly modified by the language of section 490. In *Pierson* v. *The People* (79 N. Y., 433), it is said: "The office of construction is to get a meaning out of the language used, if possible. If the words used are clear and unmistakable in their meaning, and their force cannot be limited by a consideration of the whole scope of the statute or the manifest purpose of the legislature, they must have full effect. But in endeavoring to understand the meaning of words used, much aid is received from a consideration of the mischief to be remedied, or object to be gained by the statute. By such consideration, words otherwise far reaching

in their scope may be limited. Statutes are always to be construed, if they can be, that they may have reasonable effect, agreeably to the intent of the legislature; and it is always to be presumed that the legislature has intended the most reasonable and beneficial construction of its acts. Such construction of a statute should be adopted as appears most reasonable and best suited to accomplish the objects of the statute; and where any particular construction would lead to an absurd consequence, it will be presumed that some exception or qualification was intended by the legislature to avoid such consequence. A construction which will be necessarily productive of practical inconvenience to the community is to be rejected unless the language of the law-giver is so plain as not to admit of a different construction."

Applying these well-known rules of interpretation to the section here involved, and having regard to what was intended by the legislature in enacting section 490, at the time of the adoption of the Penal Code, we think it hardly conceivable that it was its intention or purpose to radically change the definition of the crime of arson as it existed in this State since the year 1813 at least, and down to the time of the adoption of the Penal Code in 1881.

That some support is to be found for the view that section 490 should be given the sweeping effect claimed for it by the appellant is undoubted. We have the old case of *People* v. *Cotteral* (18 Johns., 115), decided in 1820, which, in construing the law already referred to which existed in this State at that time, held in a case where prisoners took hot coal from the fire and burned a hole in the woodwork of the jail for the purpose of facilitating their escape, and notwithstanding the efforts to put out the fire, the building was burned though not totally destroyed, that the prisoners were not guilty of arson because there was wanting the intent to destroy the building.

With respect to this decision, all that need be said is that it has not been followed in this State, and, as already shown, the definition of arson was changed by the Revised Statutes by adding thereto the words "set on fire," which made it clear that the legislature intended that the views expressed in that case by the judge, in respect to its being necessary to have an intent to destroy the building present, were not to be the law of this State. This authority

may be regarded, therefore, as obsolete, because, though it was in one or two instances followed by other States, it was finally repudiated by all, so far as our examination shows. Neither has it been accepted as a correct statement of the law by any of the text-writers. The remarks in Bishop on Criminal Law (vol. 2, § 26), in which it is said that it is found difficult to assent to the doctrine of two American cases, one in New York (reference being had to *People* v. *Cotteral*), and the other in North Carolina, fairly expresses the reception with which the case of *People* v. *Cotteral* was received by all the authorities to whose attention the case had been called.

It can never be presumed that the legislature intends an unwise or injurious result to flow from its action; and where two constructions can be given to a statute, that one, other things being equal, should be given which would negative the charge of unwise and injurious legislation. It cannot be that the legislature intended to show undue leniency to, or to throw any safeguards around, those who in the dead of night would set on fire a building or dwelling inhabited by families; and where this was done deliberately and intentionally, with a view of obtaining gain or profit by way of insurance, that because it was not coupled with proof showing an intention to burn the entire building, the criminal should go unwhipped of justice. The crime of arson has always been justly regarded as one of the greatest and most heinous offenses, and one which merits least consideration and the greatest punishment. In our large cities numberless families are at times compelled to huddle together, and it would be a serious mistake for the legislature to allow a malefactor, who willfully and intentionally set on fire such a dwelling-house, to escape because his motive or intent was not to destroy the whole building, but only sufficient thereof to obtain insurance which may have been placed upon furniture in one of the apartments thereof. That was exactly the attitude of the prisoner here. There can be no doubt upon the evidence that he set fire to the house, having kindled a fire in five separate places. His motive was to secure the fruits of the policies of insurance which he, a few days prior to the fire, had taken out upon personal apparel placed in trunks, and which he proposed to destroy by burning a part at least of the building, regardless of the peril to the lives of the other

inmates. He may not have had the intent — and if he had it might have been exceedingly difficult to prove — to burn down the entire building. He, no doubt, would have been satisfied with the burning of so much of it as would secure to him the insurance; but the means that he adopted to that end were well calculated not only to have secured what he sought to effect, but also to have involved in the most cruel of deaths every occupant of the house.

If we were to apply, in the absence of any statute, the rule that one must necessarily intend the consequence of his acts, the intent could readily be divined from the act itself. This is, moreover, a rule of criminal evidence that "a man is presumed to intend the natural, necessary, and even probable, consequences of what he intentionally does." (1 Bishop on Crim. Law [7th ed.], § 734.) If, therefore, an intent to destroy the building needed to be present, it would have been necessarily implied from the character of the criminal act and the rule of criminal evidence just cited.

The appellant insists, however, that section 490 is part of the definition of what constitutes the crime of arson in the first degree, and, therefore, the indictment should have alleged the intent, and the evidence on the part of the prosecution should have gone to the extent of proving beyond a reasonable doubt that the prisoner had the intent, at the time that he willfully set fire to the dwelling, of destroying it. It may be here remarked, parenthetically, that the word "it," in the last sentence of section 490, under the authorities must be construed to mean not only the entire building, but "any part of it," the whole being put for a part under a figure of speech.

With respect to this contention we think there are two answers, which make perfectly consistent and reconcilable the legislation, and save us from assuming that the legislature was guilty of so unwise an act as to give immunity to those who could be guilty of the crime of setting fire to a dwelling-house in which there were human beings in the dead of night, for the purpose of securing money by defrauding an insurance company. The first is that section 490 is no part of the definition of arson in the first degree, requiring a statement in the indictment of facts showing an intent to destroy the building, or proof of such intent upon the trial; but is a section which in cases other than willful setting on fire would

temper or mitigate the vigor of the definition, and afford upon the trial an opportunity to a prisoner to avoid the force of the definition by showing beyond a reasonable doubt that there was no intention on his part to destroy the building. This we think is strengthened by a reading of the section (490), which excludes by its language the idea that the burden was placed in cases of this kind upon the prosecution of establishing beyond a reasonable doubt the intent of the prisoner to destroy the building. Its language rather indicates that though one might by his acts bring himself within the technical definition of the crime of arson, it would still be proper and competent for him to show that there was no intent to destroy the building.

The second, and we think the more reasonable view, which also renders harmonious the entire legislation, is that this section 490 has reference to another and distinct class of crimes, namely, non-willful as distinguished from willful acts, which latter are the ones included in the other sections defining arson in its various degrees. This construction is enforced when we remember that in the prior sections the essential words are the willful setting on fire which are omitted in section 490, thus showing that this section must refer to a different class of burnings from those covered by the prior sections, and is nothing more than a statutory declaration of the exemption given by the common law to negligent or other non-willful burning of buildings.

If a painter engaged in repainting a dwelling-house, who, for the purpose of removing paint from a door or other portion of the house, should apply alcohol or benzine with a view to burning off the old paint, and which, without any intention on his part, resulted in a destruction of the building, it would have been at common law, and under our statutes prior to the Penal Code, and now under section 490, a good defense in pleading to an indictment, and upon a trial for arson, to have shown that the act charged as a crime was the result of carelessness, or that, though the act of burning may have been willful, it was not the result of a design to destroy the building, which is well illustrated by the instance just given of the painter, who, though he had willfully applied fire to a portion of the building, had no intention of destroying the whole or any portion thereof. Such a plea, established by evidence beyond reasonable doubt, would

be a perfect answer to the crime charged against one who technically may have brought himself within the letter of the definition. The section thus viewed would be but declaratory of the common law.

We think, therefore, that section 490 should not be so construed as to give to the crime of arson a new definition, or make it depend, not upon the willful burning or setting on fire of a building, but on the presence or absence of an intent to destroy it at the time it was set on fire. The indictment having been drawn in the language of section 486, defining the crime of arson, we think it was a sufficient specification of the crime. Upon the trial of such an indictment section 490 was available to a defendant in the event that he could produce evidence tending to show that there was no intention to destroy the building, upon which, if clearly made out, the court could direct an acquittal, or, if in dispute, submit the question to the consideration of the jury.

This construction of section 490 was the one given by the learned recorder, and the one contended for by the people upon this appeal, and which, it seems to us, brings it in harmony with the preceding sections. Thus taken together they constitute a complete declaration of the law of arson as applied, first, to willful acts of burning and setting on fire of buildings (§§ 486, 487, 488), and, in section 490, to non-willful acts resulting in such burning. Such a construction, moreover, disposes of the contention of appellant that the presence of a motive, other than the destruction of the building, relieves one who willfully sets on fire a building from criminal liability under an indictment for arson in the first degree.

It will be noticed that the learned recorder was consistent in the view he took as to this construction of section 490, if we examine his charge, which was entirely fair and impartial, and the requests submitted by the defendant, which, in respect to the effect to be given to section 490, were made conformable to such construction by his amendments thereto. The view contended for by the appellant was presented by his sixth request, which was refused, to the effect that "if the jury shall find that the burning of the building was for any other purpose or intent, beyond a reasonable doubt, than to destroy the building, then it is not arson, and no conviction can be had under this indictment." The construction, on the other hand, given to the section by the recorder, is to be found in the

amendments to the fourth, fifth and seventh requests of the defendant. The fourth request asked that "if the jury find from all the evidence, beyond a reasonable doubt, that there was no intent to destroy by burning the building, * * * then the act of burning is not arson and the defendant should be acquitted." This request was charged in the following amended form: "That if the jury find from all the evidence, beyond a reasonable doubt, that there was no intent on the part of the defendant to destroy by burning or setting on fire the building, * * * then the act of burning is not arson and the defendant should be acquitted." As amended the fifth request was charged as follows: "If the jury shall find that the building, No. 50 East Twenty-ninth street, was burned or set on fire, with no intent on the part of the defendant to burn or set the same on fire, it is not arson, and no conviction can be had under the indictment." With respect to the seventh request, which was asked, "That if from all the evidence the jury shall find, beyond a reasonable doubt, that there was no intent to destroy the building, then no conviction can be had under this indictment," it was amended so as to read: "If from all the evidence the jury shall find, beyond a reasonable doubt, that there was no intent on the part of the defendant to burn or set on fire the building in question, then no conviction can be had under this indictment."

We think that in the amended form the requests were presented as favorably to the prisoner as the law required or demanded, and that the refusal to charge the sixth request in the form in which it was presented was not error. Nor do we think that any exception will lie to the answer which was given by the recorder in response to the question propounded by the jury during the course of their deliberations, viz.: "That if they (the jury) find that the defendant set fire for the purpose of obtaining the insurance only, can they find him guilty of the offense?" It is insisted that this question demanded a categorical answer, or, as claimed by appellant's counsel, that it was the duty of the recorder to read section 490 in answer thereto. In our view, it would have been proper for the court to have answered the question categorically in the affirmative; but the fact that, instead of doing that, the crime of arson was again explained cannot be in any way regarded as having prejudiced the prisoner, but was necessarily more favorable than had a categorical answer

been given. Having, by explaining again the crime of arson, fully answered the question propounded by the jury, the court was not obliged to entertain other requests submitted by the counsel for the prisoner, and to either refuse to charge or to charge them; and the position taken at that stage of the trial by the recorder, that he would charge nothing further than to answer the question propounded by the jury, was a correct one.

Besides this principal one, many subsidiary questions have been pressed upon our attention, some of which it is necessary briefly to refer to. In this connection it may serve the purpose of clearness if we classify these other errors assigned and consider them in the order in which they respectively arise, taking up, first, those which relate to the indictment; second, the question relating to the qualification of one of the jurors; third, exceptions to the admissibility of evidence; and, fourth, exceptions to the judge's charge, other than those already noticed.

*First.* The indictment contained two counts, in one of which the defendant and appellant is charged with feloniously, willfully and maliciously having set fire to the dwelling-house of one Ellen R. Van Duzer, in the Twenty-first ward, city of New York. The other count of the indictment charges the defendant with having set fire to the dwelling-house of Frank B. Doughty, at the ward, city and county aforesaid. The complaint to the indictment was three-fold:

(*a.*) In not setting forth, as provided by section 490, facts and circumstances showing an intent to destroy the building, which we have already discussed and disposed of.

(*b.*) That two distinct offenses of arson in the first degree are charged. When we read the two counts of the indictment which, it is claimed, set forth two distinct offenses, it will be seen, from the language used, from the similarity of dates, and from the identity of persons stated to have been within the dwelling-house, from the form of the two counts, and from the express statement in the count that it is the same crime of arson as in the first count that is charged, that the purpose sought was merely to remove doubt, which upon the evidence might be created, as to whether the dwelling-house was that of Ellen R. Van Duzer or Frank B. Doughty. But the indentification and coincidence of dates and facts are such as to show that

the indictment merely in a distinct and separate way charged the same offense to have been committed in relation to property which may have belonged to either of the parties named. While the rule is that the indictment must charge but one crime and in one form, it is equally well settled that there may be a joinder of various counts stating the same offense distinctly and separately in various ways. (*Nelson* v. *People*, 5 Parker Cr. Rep., 39; *Lanergan* v. *People*, 6 id., 209.)

(*c.*) The failure of the court to compel the district attorney to elect between these two separate and distinct crimes. What we have already said with respect to the indictment itself is equally applicable to this objection. If two crimes had been charged, it would be an undoubted right to have compelled an election; but as there was but one and the same offense charged by a joinder of two counts stating the same offense distinctly and separately, the motion to compel the district attorney to elect was properly denied.

*Second.* The exception relating to the qualification of the juror Whiting. This juror, after a very thorough examination, was challenged by the people, which was sustained by the court, and an exception taken to the ruling. The law in regard to reviewing such ruling is thus stated in the case of *People* v. *McQuade* (110 N. Y., 297). "It seems, therefore, that the Code has restored the law as it originally stood (Code of Crim. Pro., § 455), and that the decision of the trial judge on the question of indifferency is not reviewable, except in the absence of any evidence to support it, in which case it is an error of law to which an exception lies." An examination of the record will show, with respect to this juror, that there was evidence to support the ruling of the court. If, however, we examine the testimony, we do not think that Whiting by any means qualified himself to act as a juror, and the challenge was properly sustained. To show this it is unnecessary for us to review all the questions put to this juror; one or two will be sufficient, we think, to justify the ruling of the recorder. When asked the question, "Suppose the evidence is entirely circumstantial, then do you know of any reason why you could not sit as a juror?" He answered: "It would have to be very precise and exact."

"By the COURT — Q. What do you mean that it would have to be very precise and exact? A. Well, before I would convict a man

of arson in the first degree the evidence would have to be such that there would be no doubt whether in my mind—very precise and exact.

" Q. Do you mean to say no reasonable doubt or no doubt whatever? A. No doubt at all.

" Q. You would include every doubt? A. Yes, sir.

" Q. Reasonable and unreasonable? A. It depends entirely on the evidence."

And finally, in answer to the question of the court, as follows: " Q. And suppose the court was further to instruct you that if all the circumstances, as they were developed by the evidence in the case, pointed in one direction beyond a reasonable doubt, and that was towards the guilt of the accused, and if it did it was to be received and treated in the same way as you would treat direct and positive evidence, would you do so?" He answered, " I don't think I would."

These extracts, we think, show that the mind of this juror was not in the condition to be guided, as he should have been, by the law as it was to be laid down by the court, to which, if erroneous, an exception could be taken, and any injury done remedied by an appeal; but with respect to a juror who would follow his own view, regardless of the instructions of the court, there would be no means of correcting the injury or harm that he might do, whether it was to the prisoner or to the people, by disregarding the law as laid down by the court. This he expressly stated he would do if the court instructed him in a certain way with respect to the weight and effect under certain circumstances to be given to circumstantial evidence.

*Third.* Though many exceptions were taken to the admissibility and exclusion of evidence by the defendant, the exception mainly relied upon and pressed upon our attention was to permitting William Simpson, a witness for the people, to state whether or not the bed in which the fire occurred had, in fact, been slept upon on the night of the 3d of February, 1888, when it is charged the crime was committed. The question was asked: " Now, tell the jury the condition of the bed? A. I didn't look at the bed any more than any other part of the room.

" By the COURT — Q. You took a glance of it? A. Yes, sir.

" Q. Tell how it looked — its appearance? A. It appeared to me like any other bed.

" Q. I suppose so ; did it appear as if any body had recently been sleeping in it ? "

To this objection was made upon the ground that the witness should testify as to the exact condition of the bed, leaving it for the jury to determine whether anybody slept in it or not. This objection was overruled and exception taken, and the witness answered that it looked to him " as if no person had slept in it for any length of time, more than a few minutes, or it just appeared to me as if the party — as if there had been somebody in the bed, but not for a whole night."

We do not think that this is open to the objection that ordinarily lies to the expression of a mere opinion. The evident intention of the witness was, in his own way, and from his answer it would appear that he was not over-intelligent, to describe just how the bed appeared to him. The question was directed to eliciting information as to the condition of the bed, and no objection could be had to a question of that character which sought to elicit such information. The answer given was a natural one from a person who apparently had so indefinite an idea of what was sought from him. To the answer when given no exception was taken by a motion to strike out, or in any other form, the answer being allowed to remain, the appellant's counsel relying on the exception taken to overruling his objection to the question. As the question sought to elicit information which the people were justified in producing before the jury, the objection thereto was not good.

*Fourth.* As to the exceptions to the judge's charge other than those already noticed. Most of these exceptions resulted from a failure to correctly apprehend the charge, due, no doubt, to the continuous presentation by the recorder to the jury of the law bearing upon the case ; and certain phrases and portions of his language are excepted to, apart from the connection and context of the charge, which, when considered as it was delivered, presents no valid ground for an exception. It is unnecessary to notice all, but the one mainly relied on will show that the criticism made is well founded.

Thus, exception was taken to the language used by the recorder : " Now, these are facts, it appears to me, but I leave it entirely for you to determine, which have been proven here beyond all question." The language quoted followed a statement of facts about which

there was no dispute, namely, the fact that there was a fire in the dwelling-house ; that there was a fire in the room occupied by the defendant on that occasion, and that the defendant was the only occupant of that room ; that he was found in the room in possession of it with the door locked, and no one else was found at the time the door was broken in, that there was insurance upon his property contained in this room, etc.   This was merely summarizing the testimony about which there was no dispute, but which, notwithstanding, the learned recorder stated it was entirely for the jury to determine, and which preceded what was in dispute, as stated by him in his questions following the words quoted : "How did that fire occur ? "   "What produced or caused that fire ? " etc.

As said by Judge RAPALLO in *Sindram* v. *People* (88 N. Y., 196), "comments upon the testimony, so long as the judge leaves the question of fact to the jury and instructs them that they are the sole judges of matters of fact, are not the subject of legal exception." We think that the whole charge was a clear and correct statement, not only of the rules of law governing direct evidence, but also of those relating to the treatment of circumstantial evidence by a jury. As said by the Court of Appeals in *People* v. *Fanning* (L. J., Mar. 31, 1892, 131 N. Y., 659) : " In a criminal case we think the judge has the right, and, indeed, it is his duty, to present the evidence to the jury in such light and with such comments that the jury may see its relevancy and pertinency to the particular issue upon which it was admitted, and thus be better qualified to appreciate its character and weight and to determine its credibility.   These questions are for the jury ; but it is proper that a judge should assist the jury in marshaling the evidence, so that they may the more readily and intelligently come to a conclusion which shall be satisfactory to themselves, consistent with the evidence, and in accordance with the law."

Upon examining this record, therefore, and having in mind section 542 of the Criminal Code, which says, that " after hearing the appeal the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties," we are of opinion that justice requires that this judgment should be affirmed.

BARRETT, J., concurred.

VAN BRUNT, P. J.:

While concurring in the opinion of Mr. Justice O'BRIEN, it may not be inappropriate to add a few words upon the point raised as to the construction to be given to section 490 of the Penal Code.

The only difficulty which exists in reference to the legislation, as contained in the Penal Code, arises from the fact that the codifiers were not content with codifying the law as they found it, and as it had been expounded for over fifty years, but attempted to make plain that which was entirely clear before, and with the result usually attending such efforts of producing confusion and uncertainty.

A person who willfully burns or sets on fire a building, structure, erection, vessel, car or other vehicle, is guilty of arson, as such crime is defined by the Penal Code.

Upon the part of the defendant it is claimed that, because of section 490, which is as follows: "The burning of a building under circumstances which shows, beyond a reasonable doubt, that there was no intent to destroy it, is not arson," the defendant, therefore, was not guilty of arson.

It may very well be claimed that this section has no application to the case at bar, because the building in question was not burned; it was merely set on fire but not destroyed. But it is not necessary to resort to any such special construction.

If the claim advanced by the defendant is true, then the definitions of arson, as contained in sections 486, 487 and 488 of the Penal Code, are expressly repealed by section 490, and as to what is called a fire-proof building the crime of arson has been abolished. A person may with impunity set on fire a portion of a building which is fire proof and not be guilty of the crime of arson.

We do not think that the legislature defined arson with so great particularity, and then intended to repeal absolutely the definition. The definition is particular: "A person who willfully burns or sets on fire;" "willfully burns," would seem to imply a destruction of the building; a simple setting on fire would imply that the building was not destroyed. Therefore, so far as the definition of arson is concerned, the question as to whether the building is destroyed or not is entirely immaterial. If it is willfully set on fire, it is just as much arson as though the building was burned and destroyed. This being the definition of arson at the time of the codification,

the codifiers seem to have been needlessly apprehensive lest some injustice might be done because of the breadth of the definition of arson; in other words, that in case where a fire was started intentionally, but innocently and for an innocent purpose, the person should not be guilty of arson, although the building might be destroyed, and such action might possibly come within the rigid definition of willful burning or setting on fire. This apprehension was entirely groundless, in view of the fact that it had been well settled that the intent with which the fire was started must be malicious in order to constitute the crime of arson.

It was only for the purpose of preventing this forced construction of the previous definitions of arson that this section was inserted, and which was entirely new in the criminal law. Therefore, the learned recorder was entirely correct in the charge which he gave in respect to the section in question.

BARRETT, J., concurred.

Judgment affirmed.